**Gerald STAUB, Petitioner,**

v.

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Jan. 26, 1996.

Decided March 19, 1996.

Gerald G. Staub, pro se, as Petitioner.

Ralph H. Colflesh, Jr., for Intervenor, Philadelphia Gas Works.

Judith M. Gilroy, Assistant Counsel, and Clifford F. Blaze, Deputy Chief Counsel, for Respondent.

Before DOYLE and FLAHERTY, JJ., and LORD, Senior Judge.

LORD, Senior Judge.

Gerald G. Staub appeals an Unemployment Compensation Board of Review (Board) order that affirmed a referee's decision denying Staub unemployment benefits under the Pennsylvania Unemployment Compensation Law (Law), Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §§ 751–914.

The Board found the following facts. Staub worked as a supervisor of residential marketing for Philadelphia Gas Works (PGW), intervenor in this appeal. Due to reorganization, PGW offered Staub and similarly situated co-workers an early retirement incentive plan (ERIP), which provided them with enhanced retirement benefits in return for their agreement to leave employment voluntarily.

Staub accepted the ERIP, thereby agreeing to leave his job on March 1, 1995. He was not forced or coerced into accepting the plan. His primary reason for accepting it

was that it allowed him to retire at the age of fifty-two. In addition, Staub believed PGW was in poor financial condition and he feared that, if he did not accept the plan and was subsequently laid off, he would lose his health benefits. Before accepting the ERIP, Staub was not informed that his job or department would be eliminated. Continuing work was available to him had he not accepted the plan.

Staub applied for unemployment benefits, which were denied. He then appealed to the referee, who affirmed the denial of benefits. On further appeal, the Board initially reversed the referee's decision, but subsequently granted PGW's request for reconsideration. The Board next affirmed the referee's decision, concluding, based on testimony that continuing work was available, that Staub had voluntarily terminated his employment without cause of a necessitous and compelling nature. Section 402(b) of the Law, 43 P.S. § 802(b). Staub now appeals *pro se* to this Court.

■ Our scope of review is limited to determining whether constitutional rights were violated, an error of law was committed or findings of fact were unsupported by substantial evidence. *Flannery v. Unemployment Compensation Board of Review*, 125 Pa.Cmwlth. 64, 557 A.2d 52 (1989).

This case touches on the issue of early retirement as it relates to job security, an issue that seems to have taken on new significance recently. PGW suggests that voluntary retirement plans allow an employee like Staub to retire at an earlier age than usual, collect enhanced pension sums and continue health benefits and, thus, unemployment benefits are not warranted. On the other hand, it is not disputed that many early retirement plans are being made in the context of employers' budgetary and workforce reductions and, therefore, the potential for involuntary termination for which the Law is

designed will often be present to some degree. That degree in turn becomes the relevant consideration in deciding a case such as this.

■ Initially, we shall discuss several relevant cases that guide our decision here. In these types of cases, where employees choose enhanced early retirement offers, circumstances are examined to determine if they rise to the level of necessitous and compelling cause for a voluntary termination. *Philadelphia Parking Authority v. Unemployment Compensation Board of Review*, 654 A.2d 280 (Pa.Cmwlth.1995).[1] In the factual matrix of that case, we held that a claimant had such cause to accept an early retirement plan and, accordingly, was entitled to benefits. Specifically, when making its offer, the claimant's employer positively informed the claimant it intended to make a serious effort to downsize its operation and would lay off a considerable number of employees. The employer did in fact lay off approximately one hundred and fifteen people, informed the claimant that he was on a list of approximately one hundred others who could be laid off and actually laid off several people from that list. The employer expected more layoffs and did not demonstrate that continuing work would be available.

We also determined that a claimant was eligible for unemployment benefits after electing a retirement plan under the circumstances in *Eby v. Unemployment Compensation Board of Review*, 157 Pa.Cmwlth. 10, 629 A.2d 176 (1993). The claimant's employer there did not contest the claim, appear at the referee's hearing or otherwise present evidence. We therefore reviewed the Board's decision under a capricious disregard of evidence standard. We concluded that the Board's finding that continuing work was available to the claimant was completely unsupported. Moreover, the claimant introduced a retirement offer letter sent to him

---

**1.** It is a claimant's burden to prove that he voluntarily terminated his employment for cause of a necessitous and compelling nature. *Delaney v. Unemployment Compensation Board of Review*, 133 Pa.Cmwlth. 107, 574 A.2d 1198 (1990). Whether a claimant has good cause for a voluntary termination is a legal conclusion subject to appellate review. *Id.* Of course, that conclusion

must be based on the supported findings of the Board, as the ultimate fact-finder, even if there is evidence to the contrary. *Hercules, Inc. v. Unemployment Compensation Board of Review*, 146 Pa.Cmwlth. 77, 604 A.2d 1159 (1992). It is well established that the Board's findings, as long as they are supported by substantial evidence in the record, are conclusive on appeal. *Flannery.*

by the employer stating "you are in a group that has identified work to be eliminated," urging the claimant to "be realistic" and expressing "sad[ness] . . . that we must take these actions." *Id.* 629 A.2d at 177.

Those cases are materially different from *Peoples First National Bank v. Unemployment Compensation Board of Review,* 159 Pa.Cmwlth. 134, 632 A.2d 1014 (1993). The employer told the claimant there that, if he did not accept an early retirement plan, a layoff was "a possibility, but they didn't think so." *Id.* 632 A.2d at 1018. We nonetheless reversed the Board's determination granting benefits, emphasizing that, unlike the situation in *Eby,* unrefuted evidence indicated that continuing work was available. We also recognized that the possibility of a future layoff was insufficient to prove necessitous and compelling cause. *See also Department of the Navy v. Unemployment Compensation Board of Review,* 168 Pa.Cmwlth. 356, 650 A.2d 1138 (1994) (a claimant's uncertainty and speculation about the future existence of a job did not create necessitous and compelling cause for a voluntary termination); *Flannery* (a claimant speculating that his eventual layoff was inevitable did not have necessitous and compelling cause to accept an early retirement package where continuing work was available).

■ We glean from the foregoing decisions that speculation pertaining to an employer's financial condition and future layoffs, however disconcerting, does not establish the requisite necessitous and compelling cause. Instead, the relevant inquiry is whether surrounding circumstances at the time an employee voluntarily leaves indicate a likelihood that fears about his or her job security will otherwise materialize, that serious impending threats to the employee's job will be realized and that the employee's belief that his job is

imminently threatened is well founded. The very fact that an employer is inducing employees—even those who would rather continue working—to leave is itself a powerful, relevant consideration. This is especially true since an employee may be involuntarily placed in the unenviable position of taking a risk one way or another in an uncertain environment. However, the offer itself is obviously not entirely dispositive, given our prior decisions. There must be some additional circumstances existing at the time the employee accepts it. For example, a lack of suitable continuing work, either currently or at a discernible point in time, together with statements or actions of the employer showing a likelihood of imminent layoff, will certainly suffice. *Philadelphia Parking Authority; Eby.* In such a case, a reasonable person would be compelled by real and substantial pressures to accept an enhanced early retirement offer rather than be laid off.[2] To the contrary, where at the time of retirement suitable continuing work is available, the employer states that a layoff is possible but not likely, and no other factors are found by the Board that remove an employee's beliefs from the realm of speculation, a claim for unemployment benefits fails despite the offer to leave. *Peoples.*[3]

■ Having endeavored to set forth the law in this area, we think it is evident that the Board's conclusion in this case correctly follows from its findings. Again, the employers in *Philadelphia Parking Authority* and *Eby* affirmatively stated, in the context of making their retirement offers to their employees, that layoffs would occur, without demonstrating that continuing work was available to the employees. In light of the directly contrary findings by the Board here, this case seems far more akin to *Peoples.*

**2.** Good cause for voluntarily leaving one's employment results from circumstances which produce pressure to terminate employment that is both real and substantial and which would compel a reasonable person under the circumstances to act in the same manner. *Philadelphia Parking Authority.*

**3.** Because the facts of this case are analogous to those in *Peoples,* we need not discuss which other facts or combinations thereof will lead to what

results. We do note, however, that the bare facts of continuing work availability and the absence of an employer's statement, while properly afforded weight, may not end the inquiry in certain cases. Other factors a claimant proves existed at the time he or she accepted an invitation to leave may produce the type of substantial pressure that would compel a reasonable person to leave his or her work.

Indeed, the following holding in that case appears equally applicable here:

> Claimant voluntarily terminated his employment as a matter of choice because he wished to avoid the possibility of being laid off in the future. At no time, did Employer state that Claimant's job was to be eliminated. Moreover, our review of the record reveals that the testimony of Employer's witness, which Claimant did not refute, indicates that continuing work was available.... We, therefore, conclude that Claimant's speculative belief that he would be terminated if he did not accept Employer's voluntary enhanced early retirement package is not cause of a necessitous and compelling nature. As such, Claimant is ineligible for benefits under Section 402(b) of the Law.

*Peoples*, 632 A.2d at 1018.

The remaining question, then, is whether the Board's findings are supported by substantial evidence. Staub does not cite any of the foregoing authority, but challenges several of the findings of the Board, which originally decided in his favor, in claiming that he had necessitous and compelling cause to leave his employment.

First, he argues that PGW planned a downsizing of its workforce, not a reorganization as the Board found. However, the Board's finding is supported by the following substantial evidence from PGW's employment supervisor, Renee Woodridge:

> EL   Were employees being eliminated as part of the reorganization?
>
> EW1  No, they were not.

> . . . .

> R   Was Mr. Staub's department or division being consolidated with another department or division?
>
> EW1  No, it was not.

> . . . .

> R   Has [sic] any titles been changed?
>
> EW1  Titles have been changed, yes.
>
> C   Yes, sections merged?
>
> EW1  We've had, yes....
>
> C   You wouldn't consider that reorganization?
>
> EW1  There was [sic] no one lost their job.

> . . . .

> R   Would you consider that to be reorganization?
>
> EW1  Yes.

(Notes of Testimony, April 18, 1995 (N.T.), pp. 15–17).

Second, Staub asserts that he did not plan to retire at age fifty-two as the Board found, but was compelled by the fear of layoff and loss of health benefits to accept the ERIP grudgingly and on short notice. This assertion is unavailing based on the precedent discussed thus far. We also note that, contrary to Staub's suggestion, the Board in fact acknowledged that his retirement was motivated in part by his fears related to job security and health benefits. Moreover, the particular finding stands because Staub himself testified that his primary reason for accepting the ERIP was that, at his age, he would not normally otherwise qualify for early retirement. (N.T., pp. 6–8).

Third, Staub states that PGW's poor financial condition is a fact, not merely his belief. He argues that this fact is established by a large number of employees accepting the ERIP, as well as by the occurrence after he retired of actual layoffs to improve PGW's "bottom line." Last, he claims that future layoffs were implied and that PGW never provided a positive outlook on his retaining his position or promised him continuing work.[4] However, in support of these argu-

---

4. Staub argues that positive assurances were not forthcoming from PGW and that he accurately "saw the handwriting on the wall," not that layoffs were occurring when he chose to retire, as was the case in *Philadelphia Parking Authority*. Nor are we presented with a situation where PGW affirmatively stated that there would be layoffs, as in *Philadelphia Parking Authority* and *Eby*, or even, for that matter, that layoffs were possible, as in *Peoples*. Additionally, the first Board decision in this case, granting Staub benefits, relied on a finding that Staub was never guaranteed continuing work. We perceive no basis whatsoever for the proposition that such a finding alone compels a conclusion of good cause for a voluntary termination.

ments, Staub refers to several items appended to his brief that are not part of the original record and, therefore, may not be considered. Further, Woodridge provided the following record testimony:

> EL   Okay, and the department in which Mr. Staub worked is that department still viable at PGW?
>
> EW1   Yes, it is.
>
> . . . .
>
> EL   Just a minute, has there been anyone laid off from that department at PGW?
>
> EW1   No, they haven't.
>
> . . . .
>
> R   All right, now, Ms. Woodridge, was Mr. Staub's job title being eliminated?
>
> EW1   No, it was not.
>
> . . . .
>
> R   Was continuing work available for him if he didn't take the ERIP?
>
> EW1   Yes.
>
> R   Okay, now he said that he believed that he could continue to work for approximately ten years. Would you agree with that?
>
> EW1   I would agree with that.

(N.T., pp. 13–16).

We of course must accept the supported findings of the Board in the decision before us. Those findings, which include the fact of continuing work availability and exclude positive indications that Staub would likely be laid off if he did not accept the retirement offer, lead us to the Board's conclusion. In rejecting Staub's arguments in this appeal, we do not dismiss his concerns or those of employees in general. Indeed, similar concerns have surfaced in several recent cases, as discussed above. Nevertheless, those cases, which are directly on point, show why Staub was properly denied benefits.

Accordingly, the order of the Board sustaining the referee's decision is affirmed.

### ORDER

AND NOW, this 19th day of March, 1996, the order of the Unemployment Compensa-

tion Board of Review, No. B–337938–B, dated August 24, 1995, is hereby affirmed.