Carol J. TEETERS, Petitioner,

v.

## UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs July 24, 1998.

Decided Oct. 13, 1998.

John B. Dougherty, Harrisburg, for petitioner.

Randall S. Brandes, Harrisburg, for respondent.

Before FRIEDMAN and KELLEY, JJ., and JIULIANTE, Senior Judge.

FRIEDMAN, Judge.

Carol J. Teeters (Claimant) appeals from an order of the Unemployment Compensation Board of Review (UCBR) affirming the decision of the referee to deny Claimant unemployment compensation benefits under section 402(b) of the Unemployment Compensation Law (Law).[1] We reverse.

The Defense Distribution Center (Employer or DDC) last employed Claimant as a material handler on December 30, 1997, at a final rate of pay of $18.66 per hour. (UCBR's Findings of Fact, No. 1.) On November 13, 1997, Employer issued a Personnel Bulletin (Bulletin I) indicating that 157 excess positions existed at the DDC. (UCBR's Findings of Fact, No. 2.) Bulletin I also stated that Employer expected that its VSIP/VERA early retirement program and normal attrition would eliminate the need for a reduction in force (RIF); however, if they did not, RIF separation letters would be issued. (Claimant Exhibit 1.) On December 10, 1997, Employer issued another Personnel Bulletin (Bulletin II) outlining the availability of a VSIP/VERA early retirement window. Bulletin II indicated that employees were eligible for VSIP/VERA early retirement if they were fifty years of age with twenty years of service or fifty-five years of age regardless of the number of years of service. (UCBR's Findings of Fact, No. 6.) This differed from Employer's "normal" retirement program under which employees were eligible for retirement only if they were fifty-five years of age with thirty years of service.[2] (UCBR's Findings of Fact, No. 4.) In addition, Employer offered employees a $25,000.00 (pre-tax) incentive to retire under the VSIP/VERA retirement program. (UCBR's Findings of Fact, No. 8.) Employees were notified that they had to submit notification to Employer of their intent to participate in the VSIP/VERA program between December 12, 1997 and December 19, 1997 and had to retire by December 30, 1997. (UCBR's Findings of Fact, Nos. 9–10.) Once an employee submitted the notification, he or she could not change his or her decision. (See H.T. at 10–11.)

Claimant took early retirement under the VSIP/VERA program and, subsequently, applied for unemployment compensation benefits. After the local job center denied Claimant benefits under section 402(b) of the Law, Claimant appealed to the referee. At a hearing before the referee, Claimant testified that, prior to the issuance of Bulletin I, she spoke with her supervisor, Joe Palese (Palese), and he indicated that there was a possibility that Claimant's position might be eliminated because there were too many supervisors. (H.T. at 8.) Claimant further testified that she was one of seven supervisors, that she was the only non-veteran supervisor and that there was a preference for veterans. (H.T. at 8–9.) In addition, Claimant stated that she had the second lowest seniority level and that the person with less seniority was a veteran. (H.T. at 8–9.) Claimant also testified that she supervised only six employees, whereas supervisors normally managed sixteen employees. (H.T. at 9.) Claimant believed that if a RIF were necessary, there was a likelihood that her position would be eliminated. (UCBR's Findings of Fact, No. 11.) In addition, if Claimant were separated from her employment due to a RIF, Claimant would lose her monthly retirement income as well as her health benefits.

---

1. Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(b), provides, in relevant part: "An employe shall be ineligible for compensation for any week-...[i]n which his unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature...."

2. Because Claimant worked for Employer for approximately 23 years, Claimant met the eligibility requirements for Employer's VSIP/VERA retirement program, but did not meet the eligibility requirements for Employer's "normal" retirement. (UCBR's Findings of Fact, Nos. 1, 5, 7.)

(UCBR's Findings of Fact, No. 12.) Claimant testified that she decided to take the early retirement based on this information. (H.T. at 9.) Finally, Claimant stated that, subsequent to her retirement under the VSIP/VERA program, Employer announced another early retirement plan. (UCBR's Findings of Fact, No. 18.)

For its part, Employer offered the testimony of Palese. Palese testified that Claimant was doing a fine job and would not have been fired. (H.T. at 17.) Palese also testified that there was continuing work available to Claimant if she did not get caught up in the RIF. (H.T. at 17; *see* UCBR's Findings of Fact, No. 17.) Palese stated that no RIF was in effect at the time of, or subsequent to, Claimant's retirement; however, Palese admitted that it was possible that the RIF did not occur because enough people took early retirement. (H.T. at 17–18; *see* UCBR's Findings of Fact, Nos. 14–15.)

After the hearing, the referee denied Claimant benefits under section 402(b) of the Law. Claimant appealed to the UCBR, which affirmed. Claimant now appeals to this court,[3] arguing that the UCBR erred as a matter of law in denying Claimant benefits because she met her burden of proving a necessitous and compelling reason for accepting Employer's offer of early retirement.[4] We agree.

We begin by acknowledging the complexities involved in unemployment compensation cases resulting from an employer's "downsizing" and an employee's decision to accept an employer's offer of a separation/early retirement package. *See PECO Energy Co. v. Unemployment Compensation Board of Review*, 682 A.2d 49 (Pa.Cmwlth. 1996), *appeal denied*, 547 Pa. 739, 690 A.2d 238 (1997) (*PECO I*). We recognize that an employer cannot assure its employees of jobs without knowing how many employees will elect to accept the separation/early retirement package. *Id.* Similarly, an employee who accepts a separation/early retirement package cannot know whether continuing work would have been available had he or she remained employed. *Id.* Importantly, we are mindful of the fact that hindsight is always 20/20. Accordingly, an employee's decision to voluntarily terminate his or her employment must be scrutinized under the circumstances as they existed *at the time an employee voluntarily leaves employment*, and each case will turn on its own facts. *See PECO I; Staub v. Unemployment Compensation Board of Review*, 673 A.2d 434 (Pa. Cmwlth.1996).

A claimant who voluntarily terminates his or her employment has the burden of proving that the termination was for cause of a necessitous and compelling nature. *Taylor v. Unemployment Compensation Board of Review*, 474 Pa. 351, 378 A.2d 829 (1977); *Staub.* Although the Law does not define what constitutes "cause of a necessitous and compelling nature," our supreme court has described it as follows:

> "[G]ood cause" for voluntarily leaving one's employment (i.e. that cause which is necessitous and compelling) results from circumstances which produce pressure to terminate employment that is both real and substantial, and which would compel a reasonable person under the circumstances to act in the same manner.

*Taylor*, 474 Pa. at 358–59, 378 A.2d at 832–33. When deciding whether an employee had good cause to terminate his or her employment, our decision must be guided by the Law's purpose which is to provide benefits to workers who are unemployed through no fault of their own. *Allegheny Valley School v. Unemployment Compensation Board of Review*, 548 Pa. 355, 697 A.2d 243 (1997) (stating that section 3 of Law, 43 P.S. § 752, is a guide by which to interpret and construe the individual sections of the Law); *see* 43 P.S. § 752.

---

3. Our scope of review is limited to determining whether constitutional rights have been violated, whether an error of law has been committed or whether necessary findings of fact are supported by substantial evidence. *Staub v. Unemployment Compensation Board of Review*, 673 A.2d 434 (Pa.Cmwlth.1996).

4. Whether one had cause of a necessitous and compelling nature is a legal conclusion and is fully reviewable by an appellate court. *Taylor v. Unemployment Compensation Board of Review*, 474 Pa. 351, 378 A.2d 829 (1977).

■ In *Staub*, after discussing several cases where employees chose to voluntarily terminate their employment via enhanced retirement offers, this court stated,

> speculation pertaining to an employer's financial condition and future layoffs, however disconcerting, does not establish the requisite necessitous and compelling cause. Instead, the relevant inquiry is whether surrounding *circumstances at the time an employee voluntarily leaves* indicate a likelihood that fears about his or her job security will otherwise materialize, that serious impending threats to the employee's job will be realized and that the employee's belief that his job is imminently threatened is well founded.

*Staub*, 673 A.2d at 437 (emphasis added). Here, the circumstances as Claimant believed them to be at the time she opted to accept Employer's irrevocable early retirement package were that: (1) Claimant's supervisor had indicated that her position might be eliminated; (2) Bulletin I stated that there were 157 excess positions and that if these positions were not eliminated voluntarily, RIF letters would be issued; (3) there were too many supervisors; (4) Claimant was the only non-veteran supervisor and there was a preference for veterans; (5) Claimant had the second lowest seniority level and the person with less seniority was a veteran; and (6) Claimant supervised substantially fewer employees than the other supervisors. In addition, Employer issued Bulletin II regarding the availability of the VSIP/VERA on December 10, 1997, allowing its employees only one week, December 12, 1997 to December 19, 1997, to make their irrevocable decisions, and requiring employees to retire by December 30, 1997.[5] Further, Employer offered its employees a $25,000.00 bonus to induce them to accept the VSIP/VERA early retirement package. Given the short time frame within which Claimant had to make a decision and the fact that Bulletin I stated that if the excess positions were not eliminated voluntarily, RIF letters would be issued, Employer certainly conveyed a sense of urgency and an immediate need to reduce the size of its work-force. Employer created circumstances which put both real and substantial pressure on Claimant to terminate her employment; this pressure, combined with Claimant's position relative to other employees and Employer's preference for veterans, indicated that Claimant's fears about her job security were well-founded and certainly would have compelled a reasonable person under these circumstances to act as Claimant did. Accordingly, we conclude that Claimant's termination was for cause of a necessitous and compelling nature, and we reverse the order of the UCBR.[6]

### ORDER

AND NOW, this 13th day of October, 1998, the order of the Unemployment Compensation Board of Review, dated April 15, 1998, at B–369530, is hereby reversed.

KELLEY, Judge, dissenting.

I respectfully dissent.

---

5. Interestingly, the claimants in other early retirement cases decided by this court had a much longer time period within which to make their decisions. For example, in *Eby v. Unemployment Compensation Board of Review*, 157 Pa.Cmwlth. 10, 629 A.2d 176 (Pa.Cmwlth.1993), after receiving a letter regarding his retirement benefits, the claimant had two months in which to elect to take early retirement and did not have to retire until three months later; in *PECO Energy Company v. Unemployment Compensation Board of Review*, 682 A.2d 58 (Pa.Cmwlth.1996), and *PECO I*, the employer offered its retirement incentive on April 14, 1994, and employees had from July 5, 1994 to September 16, 1994 to decide whether to accept, and employees had seven days to revoke their decision.

6. Claimant also asserts that findings of fact numbers 16 and 17 are not supported by substantial evidence. Specifically, those findings state, "16. The [C]laimant's job was not in jeopardy at the time she retired, and the [C]laimant's job has not been abolished by the [E]mployer" and "17. Continuing work was available to the [C]laimant at the time she retired." (UCBR's Findings of Fact, Nos. 16–17.) We need not address Claimant's challenge to these findings because they are not dispositive. *See Staub* (stating that continuing work availability may not end the inquiry). Where, as here, the claimant proves that other factors existed at the time he or she accepted the retirement package offer which produced substantial pressure that would compel a reasonable person to leave his work, the claimant is entitled to benefits. *See id.*

In determining whether, in the context of corporate downsizing, an employee who accepted an incentive package to terminate her employment voluntarily did so for necessitous and compelling cause, this court has repeatedly emphasized that "uncertainty and speculation about the future existence of a job does not create necessitous and compelling cause." *Department of the Navy v. Unemployment Compensation Board of Review*, 168 Pa.Cmwlth. 356, 650 A.2d 1138 (Pa. Cmwlth.1994). *See Peoples First National Bank v. Unemployment Compensation Board of Review*, 159 Pa.Cmwlth. 134, 632 A.2d 1014 (Pa.Cmwlth.1993); *Flannery v. Unemployment Compensation Board of Review*, 125 Pa.Cmwlth. 64, 557 A.2d 52 (Pa. Cmwlth.1989). An employee must show a *likelihood* that his fears about job security will otherwise materialize. *Staub.* An employee's belief that his or her job *might be* threatened, falls short of this standard. *See Peoples First* (benefits denied where claimant had been told by his employer that a layoff was possible, but not likely, and the employer had introduced unrefuted evidence that continuing work was available to him).

While an employer's attempt to induce employees to leave is itself a powerful, relevant consideration, this court has held that there must also be some additional existing circumstances such as "a lack of suitable continuing work, either currently or at a discernible point in time, together with statements or actions of the employer showing a likelihood of imminent layoff." *Staub*, 673 A.2d at 437. "[W]here at the time of retirement suitable continuing work is available, the employer states that a layoff is possible but not likely, and no other factors are found by the Board that remove an employee's beliefs from the realm of speculation, a claim for unemployment benefits fails despite the offer to leave." *Id.*

Here, the board found that "claimant *speculated* that if a reduction in force were to occur there was a *possibility* that her position *might be* eliminated." (UCBR's Findings of Fact, No. 11 (emphasis added)). The board further found that claimant's job was not in jeopardy at the time she retired and that her job has not been abolished by employer. (UCBR's Findings of Fact, No. 16). Additionally, the board found that continuing work was available to claimant when she retired. (UCBR's Findings of Fact, No. 17). These findings, supported by substantial evidence in the record, necessarily negate a conclusion that claimant's termination was for cause of a necessitous and compelling nature.

Claimant voluntarily chose to retire in order to take advantage of an extremely generous offer of retirement. Claimant is now attempting to obtain a twofold recovery which is contrary to the intent of the Law. As such, I believe that claimant is ineligible for benefits under section 402(b) of the Law.