Mary A. **MANSBERGER, Petitioner,**

v.

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW,
Respondent.**

Commonwealth Court of Pennsylvania.

Submitted March 7, 2001.

Decided April 30, 2001.

Kristin L. Rice, Gettysburg, for petitioner.

Kelley K. Smith, Harrisburg, for respondent.

Before DOYLE, President Judge, COLINS, McGINLEY, SMITH, PELLEGRINI, FRIEDMAN and KELLEY, Judges.

McGINLEY, Judge.

Mary A. Mansberger (Claimant) petitions for review from the order of the Unemployment Compensation Board of Review (Board) which affirmed the referee's denial of benefits under Section 402(b)

of the Unemployment Compensation Law (Law).[1]

Claimant worked as a material handler and identifier for the Defense Distribution Center (Employer). In October 1999, Employer advised employees, including Claimant, that it was downsizing and offered a Voluntary Separation Incentive Pay/Voluntary Early Retirement Authority (VSIP/VERA) window, during which eligible employees could retire and receive $25,000, in addition to their retirement. In December 1999, Claimant's supervisor indicated that eleven of twenty-three people would remain in her department after downsizing. However, Claimant was advised that the lost jobs in her department would probably be filtered to other sections. Claimant accepted the voluntary early retirement incentive because she was not certain whether another VSIP/VERA program would be offered and she wanted to receive the $25,000 bonus. Claimant stated she was not certain that she would have continuing employment. Notes of Testimony, March 28, 2000, (N.T.) at 8.

The Board determined that Claimant voluntarily terminated her employment without a necessitous and compelling reason and was ineligible for benefits:

A claimant can establish necessitous and compelling reason for quitting employment by demonstrating that the quit was consistent with ordinary common sense and prudence under the pressure of circumstances that were real not imaginary, substantial not trifling, and reasonable not whimsical, and which would compel a reasonable person under the same circumstances to act in the same manner.

1. Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(b).

The Pennsylvania Courts have held that speculation pertaining to the employer's financial conditions and future layoffs does not establish the requisite necessitous and compelling cause to voluntarily quit one's employment. Where continuing work would have been available had the claimant not accepted the incentive package, the claimant is ineligible for benefits. Only a lack of suitable, continuing work either currently or at a discernable point in time plus a likelihood of imminent layoff has been held to suffice to establish cause of a necessitous and compelling nature.

In this case, it is clear that the employer was downsizing its operations, and that this downsizing included a substantial reduction in positions in the claimant's department. The claimant was advised, however, that they would probably filter the employees to another section. The claimant therefore was speculating that she might not have a position. She has failed to demonstrate that there was a lack of suitable, continuing work available to her. Instead of exploring the possibility of continuing work, the claimant opted to retire and receive a cash incentive, voluntarily terminating her employment because she was unsure whether the incentive would be offered again.

Board Decision, May 5, 2000, at 2.

Claimant contends that she established necessitous and compelling cause for voluntarily terminating her employment.[2]

An employee voluntarily terminating employment has the burden of proving that such termination was necessitous and compelling.[3] *Taylor v. Unemployment Compensation Board of Review*, 40 Pa.Cmwlth. 303, 397 A.2d 451 (1979). The question whether a claimant has necessitous and compelling reason to terminate employment is a question of law reviewable by this Court. *Willet v. Unemployment Compensation Board of Review*, 59 Pa.Cmwlth. 500, 429 A.2d 1282 (1981). Here, the focus was on whether Claimant established, to the satisfaction of the Board, that the circumstances surrounding her voluntary quit indicated a likelihood that her fears of job security would materialize, that serious impending threats to her job would be realized, and that her belief that her job was imminently threatened was well founded. *Staub v. Unemployment Compensation Board of Review*, 673 A.2d 434 (Pa.Cmwlth.1996).[4]

2. Our review in an unemployment compensation case is limited to a determination of whether constitutional rights were violated, errors of law were committed, or essential findings of fact are not supported by substantial evidence. *Lee Hospital v. Unemployment Compensation Board of Review*, 161 Pa. Cmwlth. 464, 637 A.2d 695 (1994).

3. Good cause for voluntarily leaving one's employment results from circumstances which produce pressure to terminate employment that is both real and substantial and which would compel a reasonable person under the circumstances to act in the same manner. *Philadelphia Parking Authority v. Unemployment Compensation Board of Review*, 654 A.2d 280 (Pa.Cmwlth.1995).

4. We note that this Court in *Staub* referred to the threats to the employee's job and the employee's fears about job security when it announced the appropriate test. In *Staub*, our Court cited previous cases which addressed the availability of continuing work. We believe the more precise inquiry is to focus on whether the surrounding circumstances at the time an employee voluntarily retires indicate a likelihood that fears about the employee's employment (rather than the exact job) will otherwise materialize, that serious impending threats to the employee's employment will be realized and that the employee's belief that his employment with the employer is imminently threatened is well founded.

In *Staub*, Gerald G. Staub (Staub) worked as a supervisor of residential marketing for Philadelphia Gas Works (PGW). PGW offered Staub and similarly situated co-workers an early retirement incentive plan which provided increased retirement benefits in exchange for voluntarily leaving employment. Staub accepted the plan and agreed to leave his job. *Staub*, 673 A.2d at 435. Staub believed PGW was in poor financial condition and that if he did not accept the plan and was subsequently laid off, he would lose his health benefits. The referee and the Board affirmed the denial under Section 402(b). *Staub*, 673 A.2d at 436. Our Court agreed and determined that "speculation pertaining to an employer's financial condition and future layoffs, however disconcerting does not establish the requisite necessitous and compelling cause." *Staub*, 673 A.2d at 437.

Here, Claimant testified that Employer informed her that jobs in her department would "probably filter ... down into other sections at New Cumberland—everything of ours—outfit—was being moved to New Cumberland." N.T. at 8.[5]

5. Claimant worked for Employer in Mechanicsburg. She does not challenge a possible relocation to New Cumberland as unreasonable.

6. Claimant testified, "You didn't know if you were going to get another window to have a chance to take the VSIP/VERA and go out, so I just thought that under the circumstances that I was actually being pushed out." N.T. at 8.

7. In *Teeters v. Unemployment Compensation Board of Review*, 719 A.2d 380 (Pa.Cmwlth. 1998), Carol J. Teeters (Teeters) worked for the Defense Distribution Center as a material handler. The Defense Distribution Center informed employees that its VSIP/VERA early retirement program and normal attrition would eliminate the need for a reduction in force, and if they did not, reduction in force separation letters would issue. *Teeters*, 719 A.2d at 381.

Thomas M. Broniak (Broniak), chief of Employer's Inventory Integrity Division and Claimant's second level supervisor, testified that continuing work was available for Claimant had she not applied for early retirement. N.T. at 11. Broniak also testified that Claimant had "an impeccable record as an employee in terms of her conduct and performance." N.T. at 11.

■ The Board found that Claimant speculated that Employer would eliminate her job. Claimant did not know whether there would be another opportunity to take the $25,000 bonus payment because the VSIP/VERA plan might only be offered once.[6] As in *Staub*, and critical to our standard of review, substantial evidence supports the Board's finding. There is nothing in the record to indicate that continuing work would not be available to Claimant or that her employment was imminently threatened. The Board applied the correct standard and found Claimant did not meet her burden.[7]

Accordingly, we affirm.

Teeters took early retirement under the VSIP/VERA program and applied for unemployment benefits. The Job Center denied her benefits. At a hearing before the referee, Teeters testified that her supervisor indicated to her that her position might be eliminated because there were too many supervisors. Teeters testified that she believed a reduction in force was necessary and that there was a likelihood that her position would be eliminated due to her lack of seniority, the small number of employees she supervised and because she was not a veteran. Teeters also believed that if she were separated from employment she would lose her monthly retirement income as well as her health benefits. *Teeters*, 719 A.2d at 381.

Joe Palese, Teeters's supervisor, testified that Teeters would not have been fired and there would have been continuing work available for her. The referee denied Teeters benefits. *Teeters*, 719 A.2d at 382.

### ORDER

AND NOW, this 30th day of April, 2001, the order of the Unemployment Compensation Board of Review in the above-captioned matter is affirmed.

FRIEDMAN, Judge, dissenting:

In its opinion, the majority expressly overrules *Teeters v. Unemployment Compensation Board of Review,* 719 A.2d 380 (Pa.Cmwlth.1998); however, because I believe that *Teeters* was properly decided and is instructive in the present case, I respectfully dissent.

In *Teeters,* we acknowledged the complexities involved in unemployment compensation cases when an employer is downsizing. The employer cannot ascertain the number of positions, if any, to eliminate until after learning the number of employees that will leave voluntarily by accepting the separation/early retirement package. At the same time, the employee who accepts such a retirement package cannot be certain whether a job would have been available had he or she remained employed. We also considered the purpose of the Unemployment Compensation Law (Law),[1] which is to provide benefits to workers who are unemployed through no fault of their own. Faced with these uncertainties and considerations, we recognized in *Teeters* that the facts of each case must be carefully scrutinized, and each case must turn on its own facts.

In *Teeters,* this court faced a fact situation that is very similar to the present case and, in fact, involved the same employer. In that case, Employer issued a Personnel Bulletin indicating that 157 excess jobs existed. Although Employer expressed the hope that the early retirement program and normal attrition would eliminate the need for a RIF, Employer stated that if they did not, RIF separation letters would be issued. The claimant, Carol J. Teeters, who was employed as a material

---

The Board found that Teeters speculated that if a reduction in force were to occur there was a possibility that her position might be eliminated. The Board also found that Teeters's job was not in jeopardy at the time, that the Defense Distribution Center had not abolished her job and that continuing work was available to her. Based on these findings, the Board affirmed. *Teeters,* 719 A.2d at 383–384. This Court reversed on the basis that Teeters's fears about her job security were well-founded. *Teeters,* 719 A.2d at 383.

While our Court in *Teeters* applied the same standard that we do here, the majority of that panel disregarded the findings of fact and credibility determinations made by the Board to reach a conclusion opposite the Board's, that Teeters's fears about her job security were well-founded. Given the Board's finding that continuing work was available for Teeters and that her job was not in jeopardy at the time she took early retirement, Teeters actually failed to prove to the Board that her fear was not speculative. We erred when we ignored the critical finding that Teeters's job was not in jeopardy. To make this finding, the Board undoubtedly accepted the testimony of Employer's witness regarding Teeters's job security and rejected Teeters's testimony.

The majority in *Teeters* stated in footnote six of the opinion that it was unnecessary to address Teeters's challenge to the Board's findings of fact numbers sixteen and seventeen. Finding sixteen stated: "16. The claimant's job was not in jeopardy at the time she retired and the claimant's job has not been abolished by the employer." Finding seventeen stated: "17. Continuing work was available to the claimant at the time she retired." The majority stated that it did not need to address these findings because they were not "dispositive" when Teeters established that there were other factors that created substantial pressure that would compel a reasonable person to leave work. *Teeters,* 719 A.2d at 383, n. 6. While not dispositive, these findings were critical to the analysis and should not have been ignored. We erred in *Teeters.* We must expressly overrule *Teeters.*

1. Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended,* 43 P.S. §§ 751–914.

handler, took early retirement and a $25,000 incentive under a VSIP/VERA program window. *See Teeters.*

Following our factual analysis, we identified specific factors in *Teeters* showing that Employer conveyed "a sense of urgency and an immediate need to reduce its workforce:"

> (1) [c]laimant's supervisor had indicated that her position might be eliminated;
>
> (2) Bulletin I stated that there were 157 excess positions and that if these positions were not eliminated voluntarily, RIF letters would be issued;
>
> (3) there were too many supervisors;
>
> (4) [c]laimant was the only non-veteran supervisor and there was a preference for veterans;
>
> (5) [c]laimant had the second lowest seniority level and the person with less seniority was a veteran; and
>
> (6) [c]laimant supervised substantially fewer employees than the other supervisors.

*Teeters,* 719 A.2d at 383. In addition, Teeters had only one week to make her irrevocable decision to retire.

Having completed this analysis, we applied the accepted standard for determining eligibility for benefits and concluded, as a matter of law, that the claimant's termination was for cause of a necessitous and compelling nature because Employer:

> created circumstances which put both real and substantial pressure on [the][c]laimant to terminate her employment; this pressure, combined with [the][c]laimant's position relative to other employees and Employer's preference for veterans, indicated that [the][c]laimant's fears about her job security were well-founded and certainly would have compelled a reasonable per-

son under these circumstances to act as [the][c]laimant did.

*Id.* at 383.

In discounting *Teeters,* the majority first states that the claimant there failed to prove that her fear was not speculative. (Majority op. at 129 n. 7.) However, as we recognized in our analysis in that case, the claimant's fear in this type of situation always is speculative to a degree because the employer cannot be sure of how many positions it must eliminate until it knows how many employees will accept the separation/early retirement package, and the employee does not know until after the downsizing whether his or her job will be eliminated. Mindful that hindsight is always $^{20}\!/_{20}$, we stressed the need to examine the circumstances existing *at the time* the employee voluntarily chose to leave the employer. If the employer created circumstances that placed real and substantial pressure on the claimant to leave his or her position, then we must conclude that the claimant had necessitous and compelling reasons for doing so. Because the list of factors in *Teeters* demonstrated just such a situation, we held the claimant was entitled to benefits.

However, the majority here also concludes that we erred in *Teeters* by ignoring findings sixteen and seventeen, which indicated that work was available to the claimant at the time she retired. (Majority op. at 129, n. 7.) I must disagree. We did not ignore these findings in *Teeters;* rather, we simply recognized that they were not dispositive and that, despite such findings, a claimant could prove the existence of factors that would establish an entitlement to benefits. We saw no need to address the findings further because, after conducting a thorough analysis of the record, we concluded that the claimant did just that by presenting other factors that outweighed the findings and clearly showed

the claimant was pressured to accept the early retirement package. On that basis, we held that, as a matter of law, the claimant terminated her employment for necessitous and compelling reasons.

Because I believe *Teeters* was properly and correctly decided and remains good law, I would reverse in this case, based on *Teeters*.

Indeed, in the present case, Employer's RIF and elimination of 460 jobs by September 2000 was more certain and daunting than the possible elimination of 157 positions in *Teeters*. After Employer announced in a newsletter that it was eliminating 460 positions, (O.R. at Item No. 6, DDC News Release; UCBR's Findings of Fact, No. 8), Employer issued an employee memorandum indicating that it would run a mock RIF in April 2000 to give employees an indication of who might lose their jobs during the downsizing, (O.R. at Item No. 6, Memorandum) and, thus, enable those employees to decide whether to accept the VSIP/VERA before the official RIF was issued and their eligibility would end.[2]

Despite Employer's assurances that the mock RIF would not prevent employees from later applying for VSIP, and that "We will notify you in advance of any additional VERA/VSIP window(s) throughout FY2000," (O.R. at Item No. 6, Memorandum), the VSIP/VERA window closed before the mock RIF took place. Further, Employer never indicated that another window would open between the mock RIF in April and the official RIF in September.

In fact, Employer's own witness acknowledged that the possibility of another window was "speculative." Thus, although Employer said the mock RIF would give employees an indication of whether their jobs would remain after the downsizing, employees never received the benefit of this information in time to aid their decision-making.

Claimant was placed in the unenviable position of taking a risk in an uncertain environment where layoffs were not just possible, but likely. Employer made numerous statements that it was making serious efforts to downsize and informed employees that 460 jobs would be eliminated. Employer did not dispute that only eleven of the twenty-three positions would remain in Claimant's department after the official RIF. Because there were more than eleven people ahead of Claimant on the seniority list, and because Claimant did not possess the preferred veteran status, she could not be certain that she would still have a job after the downsizing. Thus, the circumstances indicated a likelihood of an imminent layoff for Claimant, and her fears that job loss would materialize were well-founded. Moreover, because Claimant's doubt about whether another window would open was justified, she was pressured to accept the VSIP/VERA early retirement package when she did because she could not be sure the opportunity would be offered again.

I agree with Claimant that, under these

---

**2.** The newsletter states the following:
This helps employees who would not be eligible for severance pay (i.e. retired military and VERA eligibles) to make important decisions concerning their [f]ederal careers. A [m]ock RIF letter does not preclude an employee in this category from applying for VSIP (which is based on the severance pay calculation up to a maximum of

$25,000.00). If the employee decides to remain on the rolls and see what happens in the actual RIF and that person is issued specific [sic] RIF separation notice, he/she is no longer eligible for VSIP (or severance pay)....
(O.R. at Item No. 6, DDSP 2001 Update at 10 and 12.)

circumstances,[3] a reasonable person would act as she did. Thus, I would conclude that Claimant had necessitous and compelling cause to voluntarily terminate her employment, making her eligible for unemployment compensation benefits. Accordingly, I would reverse the order of the UCBR.

SMITH, Judge, joins in this dissent.

3. Many of the factors cited in Teeters also exist here. Moreover, I note that, unlike the situation in *Teeters,* the UCBR here made no specific findings that Claimant's job was not in jeopardy and that continuing work was available. Rather, the UCBR made the finding that "*other* jobs" in Claimant's department would be abolished, but would "probably" be filtered to other sections. (UCBR's Findings of Fact, No. 7.) This finding does not indicate whether Claimant's job, or any job, would be available to Claimant after the downsizing.

The majority relies on the testimony of Employer's witness, Thomas M. Broniak (Broniak), as evidence of job availability. (Majority op. at 5.) However, as stated, the UCBR made no finding of fact regarding Broniak's statement that continuing work would have been available to Claimant, and Employer did not offer any support for this assertion. Indeed, a majority of Broniak's testimony reflects the uncertainty of Claimant's situation. As to whether another VSIP/VERA window would open up after the mock RIF, Broniak stated:

For what I know now, today, the answer to that question is *probably* yes. For what I knew in time *in the past, the answer was, it was still speculative,* only because those things have to be negotiated with all four of our represented unions....

(N.T. at 11) (emphasis added).