Mary A. MANSBERGER, Petitioner,

v.

UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Respondent.

Commonwealth Court of Pennsylvania.

Submitted March 7, 2001.

Decided April 30, 2001.

Kristin L. Rice, Gettysburg, for petitioner.

Kelley K. Smith, Harrisburg, for respondent.

Before DOYLE, President Judge, COLINS, McGINLEY, SMITH, PELLEGRINI, FRIEDMAN and KELLEY, Judges.

McGINLEY, Judge.

Mary A. Mansberger (Claimant) petitions for review from the order of the Unemployment Compensation Board of Review (Board) which affirmed the referee's denial of benefits under Section 402(b) of the Unemployment Compensation Law (Law).[1]

Claimant worked as a material handler and identifier for the Defense Distribution Center (Employer). In October 1999, Employer advised employees, including Claimant, that it was downsizing and offered a Voluntary Separation Incentive Pay/Voluntary Early Retirement Authority (VSIP/VERA) window, during which eligible employees could retire and receive $25,000, in addition to their retirement. In December 1999, Claimant's supervisor indicated that eleven of twenty-three people would remain in her department after downsizing. However, Claimant was advised that the lost jobs in her department would probably be filtered to other sections. Claimant accepted the voluntary early retirement incentive because she was not certain whether another VSIP/VERA program would be offered and she wanted to receive the $25,000 bonus. Claimant stated she was not certain that she would have continuing employment. Notes of Testimony, March 28, 2000, (N.T.) at 8.

The Board determined that Claimant voluntarily terminated her employment

---

1. Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(b).

without a necessitous and compelling reason and was ineligible for benefits:

A claimant can establish necessitous and compelling reason for quitting employment by demonstrating that the quit was consistent with ordinary common sense and prudence under the pressure of circumstances that were real not imaginary, substantial not trifling, and reasonable not whimsical, and which would compel a reasonable person under the same circumstances to act in the same manner.

The Pennsylvania Courts have held that speculation pertaining to the employer's financial conditions and future layoffs does not establish the requisite necessitous and compelling cause to voluntarily quit one's employment. Where continuing work would have been available had the claimant not accepted the incentive package, the claimant is ineligible for benefits. Only a lack of suitable, continuing work either currently or at a discernable point in time plus a likelihood of imminent layoff has been held to suffice to establish cause of a necessitous and compelling nature.

In this case, it is clear that the employer was downsizing its operations, and that this downsizing included a substantial reduction in positions in the claimant's department. The claimant was advised, however, that they would probably filter the employees to another section. The claimant therefore was speculating that she might not have a position. She has failed to demonstrate that there was a lack of suitable, continuing work available to her. Instead of exploring the possibility of continuing work, the claimant opted to retire and receive a cash incentive, voluntarily terminating her employment because she was unsure whether the incentive would be offered again.

Board Decision, May 5, 2000, at 2.

Claimant contends that she established necessitous and compelling cause for voluntarily terminating her employment.[2]

An employee voluntarily terminating employment has the burden of proving that such termination was necessitous and compelling.[3] *Taylor v. Unemployment Compensation Board of Review*, 40 Pa.Cmwlth. 303, 397 A.2d 451 (1979). The question whether a claimant has necessitous and compelling reason to terminate employment is a question of law reviewable by this Court. *Willet v. Unemployment Compensation Board of Review*, 59 Pa.Cmwlth. 500, 429 A.2d 1282 (1981). Here, the focus was on whether Claimant established, to the satisfaction of the Board, that the circumstances surrounding her voluntary quit indicated a likelihood that her fears of job security would materialize, that serious impending threats to her job would be realized, and that her belief that her job was imminently threatened was well founded. *Staub v. Unemployment Compensation Board of Review*, 673 A.2d 434

---

**2.** Our review in an unemployment compensation case is limited to a determination of whether constitutional rights were violated, errors of law were committed, or essential findings of fact are not supported by substantial evidence. *Lee Hospital v. Unemployment Compensation Board of Review*, 161 Pa. Cmwlth. 464, 637 A.2d 695 (1994).

**3.** Good cause for voluntarily leaving one's employment results from circumstances which produce pressure to terminate employment that is both real and substantial and which would compel a reasonable person under the circumstances to act in the same manner. *Philadelphia Parking Authority v. Unemployment Compensation Board of Review*, 654 A.2d 280 (Pa.Cmwlth.1995).

(Pa.Cmwlth.1996).[4]

In *Staub*, Gerald G. Staub (Staub) worked as a supervisor of residential marketing for Philadelphia Gas Works (PGW). PGW offered Staub and similarly situated co-workers an early retirement incentive plan which provided increased retirement benefits in exchange for voluntarily leaving employment. Staub accepted the plan and agreed to leave his job. *Staub*, 673 A.2d at 435. Staub believed PGW was in poor financial condition and that if he did not accept the plan and was subsequently laid off, he would lose his health benefits. The referee and the Board affirmed the denial under Section 402(b). *Staub*, 673 A.2d at 436. Our Court agreed and determined that "speculation pertaining to an employer's financial condition and future layoffs, however disconcerting does not establish the requisite necessitous and compelling cause." *Staub*, 673 A.2d at 437.

Here, Claimant testified that Employer informed her that jobs in her department would "probably filter ... down into other sections at New Cumberland—everything of ours—outfit—was being moved to New Cumberland." N.T. at 8.[5]

Thomas M. Broniak (Broniak), chief of Employer's Inventory Integrity Division and Claimant's second level supervisor, testified that continuing work was available for Claimant had she not applied for early retirement. N.T. at 11. Broniak also testified that Claimant had "an impeccable record as an employee in terms of her conduct and performance." N.T. at 11.

■ The Board found that Claimant speculated that Employer would eliminate her job. Claimant did not know whether there would be another opportunity to take the $25,000 bonus payment because the VSIP/VERA plan might only be offered once.[6] As in *Staub*, and critical to our standard of review, substantial evidence supports the Board's finding. There is nothing in the record to indicate that continuing work would not be available to Claimant or that her employment was imminently threatened. The Board applied the correct standard and found Claimant did not meet her burden.[7]

Accordingly, we affirm.

4. We note that this Court in *Staub* referred to the threats to the employee's job and the employee's fears about job security when it announced the appropriate test. In *Staub*, our Court cited previous cases which addressed the availability of continuing work. We believe the more precise inquiry is to focus on whether the surrounding circumstances at the time an employee voluntarily retires indicate a likelihood that fears about the employee's employment (rather than the exact job) will otherwise materialize, that serious impending threats to the employee's employment will be realized and that the employee's belief that his employment with the employer is imminently threatened is well founded.

5. Claimant worked for Employer in Mechanicsburg. She does not challenge a possible relocation to New Cumberland as unreasonable.

6. Claimant testified, "You didn't know if you were going to get another window to have a chance to take the VSIP/VERA and go out, so I just thought that under the circumstances that I was actually being pushed out." N.T. at 8.

7. In *Teeters v. Unemployment Compensation Board of Review*, 719 A.2d 380 (Pa.Cmwlth. 1998), Carol J. Teeters (Teeters) worked for the Defense Distribution Center as a material handler. The Defense Distribution Center informed employees that its VSIP/VERA early retirement program and normal attrition would eliminate the need for a reduction in force, and if they did not, reduction in force separation letters would issue. *Teeters*, 719 A.2d at 381.

Teeters took early retirement under the VSIP/VERA program and applied for unemployment benefits. The Job Center denied her benefits. At a hearing before the referee,

## ORDER

AND NOW, this 30th day of April, 2001, the order of the Unemployment Compensation Board of Review in the above-captioned matter is affirmed.

---

NOTE:

*Mansberger v. Unemployment Compensation Board of Review* is republished with Judge Friedman's dissenting opinion at 785 A.2d 126, 130.

---

Teeters testified that her supervisor indicated to her that her position might be eliminated because there were too many supervisors. Teeters testified that she believed a reduction in force was necessary and that there was a likelihood that her position would be eliminated due to her lack of seniority, the small number of employees she supervised and because she was not a veteran. Teeters also believed that if she were separated from employment she would lose her monthly retirement income as well as her health benefits. *Teeters*, 719 A.2d at 381.

Joe Palese, Teeters's supervisor, testified that Teeters would not have been fired and there would have been continuing work available for her. The referee denied Teeters benefits. *Teeters*, 719 A.2d at 382.

The Board found that Teeters speculated that if a reduction in force were to occur there was a possibility that her position might be eliminated. The Board also found that Teeters's job was not in jeopardy at the time, that the Defense Distribution Center had not abolished her job and that continuing work was available to her. Based on these findings, the Board affirmed. *Teeters*, 719 A.2d at 383–384. This Court reversed on the basis that Teeters's fears about her job security were well-founded. *Teeters*, 719 A.2d at 383.

While our Court in *Teeters* applied the same standard that we do here, the majority of that panel disregarded the findings of fact and credibility determinations made by the Board to reach a conclusion opposite the Board's, that Teeters's fears about her job security were well-founded. Given the Board's finding that continuing work was available for Teeters and that her job was not in jeopardy at the time she took early retirement, Teeters actually failed to prove to the Board that her fear was not speculative. We erred when we ignored the critical finding that Teeters's job was not in jeopardy. To make this finding, the Board undoubtedly accepted the testimony of Employer's witness regarding Teeters's job security and rejected Teeters's testimony.

The majority in *Teeters* stated in footnote six of the opinion that it was unnecessary to address Teeters's challenge to the Board's findings of fact numbers sixteen and seventeen. Finding sixteen stated: "16. The claimant's job was not in jeopardy at the time she retired and the claimant's job has not been abolished by the employer." Finding seventeen stated: "17. Continuing work was available to the claimant at the time she retired." The majority stated that it did not need to address these findings because they were not "dispositive" when Teeters established that there were other factors that created substantial pressure that would compel a reasonable person to leave work. *Teeters*, 719 A.2d at 383, n. 6. While not dispositive, these findings were critical to the analysis and should not have been ignored. We erred in *Teeters*. We must expressly overrule *Teeters*.