**James L. LEVENTRY, Petitioner,**

v.

**Rod MILLER, Chief Cambria County Detective and Ron Portash, Assistant County Detective, Respondents.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs March 1, 2002.
Decided April 18, 2002.

---

James L. Leventry, petitioner, pro se.

Paula J. McDermott, Harrisburg, for respondent.

Before COLINS, President Judge, COHN, J., and MIRARCHI, Jr., Senior Judge.

OPINION BY Judge COHN.

Before this court in our original jurisdiction are preliminary objections to a Petition for Removal of Public Officers filed by James L. Leventry pursuant to Section 5726 of the Wiretapping and Electronic Surveillance Control Act (Act), 18 Pa.C.S. §§ 5701–5726. The preliminary objections are filed on behalf of Rod Miller, Chief Cambria County Detective, and Ron Portash, Assistant County Detective.

The statute vesting original jurisdiction in this court and establishing this cause of action reads as follows:

5726. Action for removal from office or employment

(a) **Cause of Action.**—Any aggrieved person shall have the right to bring an action in Commonwealth Court against any investigative or law enforcement officer, public official or public employee seeking the officer's, official's or employee's removal from office or employment on the grounds that the officer, official or employee has *intentionally* violated the provisions of this chapter. If the court shall conclude that such officer, official or employee has in fact intentionally violated the provisions of this chapter, the court shall order the dismissal

or removal from office of said officer, official or employee.

(b) **Defense.**—It is a defense to an action brought pursuant to subsection (a) that the actor acted in good faith reliance on a court order or the provisions of this chapter.

Section 5726 of the Act, 18 Pa.C.S. § 5726 (emphasis added).[1]

Leventry, in his pro se petition, sets forth the following relevant averments.[2] On June 29, 2000, Leventry was arrested for violations of Section 13 of The Controlled Substance, Drug, Device and Cosmetic Act, Act of April 14, 1972 P.L. 233, *as amended,* 35 P.S. § 780–113 (pertaining to prohibited acts). He alleges the arrest was pursuant to an effort by the Cambria County Drug Task Force, citing to "Exhibit A".[3] The Task Force was spearheaded by respondent Miller, who targeted Leventry, a known drug user, in a reverse sting operation seeking to arrest him "after inducing him to purchase the prescription of oxycontin drugs from a task force informer/operative." (Petition, para.7.) Leventry admits that he was a drug addict with a longstanding dependency on opiates, but avers that he was an outpatient at the Fayette County Methadone Clinic.

He alleges that Miller offered him about fifty Oxycontin tablets "at a 25% fraction of the prevailing street price ... an irresistible offer for a desperate person addicted to this type of controlled substance."

(Petition, para.13.) He further avers that a long time family friend and former constable was the informer and that she "solicited" Leventry to telephone her and "negotiate the transfer." (Petition, para.15.) The respondents intercepted and recorded the calls by using a consensual body wire on the informer rather than a wiretap, the latter of which would require court approval. He asserts that respondents "disingenuously inflated the nature and value of the prospective communications they were endeavoring to intercept by claiming to investigate a cabal." (Petition, para.20.) Additionally, he contends that respondents "violated the procedures governing at least one memorandum of consent by obtaining the signature of the [informer] onto the document three days after the interception." (Petition, para.21.)[4] Petitioner further avers that "due to their flagrantly illegal electronic surveillance," the common pleas judge in Leventry's criminal case granted a suppression motion.

The remaining allegations concern the behavior of other individuals who are not parties to this lawsuit, and who exercised no control over the actions of the named respondents, or the behavior of respondents in other matters completely foreign to this case. Hence, we do not reiterate those allegations. We do note, however, that one of the preliminary objections is to strike this scandalous and impertinent matter, which we grant, in part, precisely

1. Our research has turned up only one other case filed here pursuant to this statute. *See Birdseye v. Driscoll,* 111 Pa.Cmwlth. 214, 534 A.2d 548 (1987).

2. Leventry, who is pro se, has filed a petition that is rambling, unclear and filled with extraneous and irrelevant information. We will rephrase the relevant portions.

3. Leventry makes reference in his petition to various exhibits that are not attached to it. He has attached certain documents to his

response brief; however, we have repeatedly stated that documents attached to a brief are not evidence and will not be considered as such. *Staub v. Unemployment Compensation Board of Review,* 673 A.2d 434 (Pa.Cmwlth. 1996); *Appeal of Konick,* 34 Pa.Cmwlth. 502, 383 A.2d 1002 (1978).

4. The memorandum is not attached to the Petition and its contents are not described therein.

because the allegations are irrelevant to this action and concern non-parties to this matter. The preliminary objection is, thus, granted as to paragraphs 23–42 and 44–55, but denied as to paragraph 43 because the averments there are, arguably, relevant to the cause of action here.

■ Respondents have also filed a demurrer. A demurrer may only be sustained when, on the face of the complaint, the law will not permit recovery. *Stone & Edwards Insurance Agency, Inc. v. Department of Insurance*, 151 Pa.Cmwlth. 266, 616 A.2d 1060 (1992), *aff'd*, 538 Pa. 276, 648 A.2d 304 (1994). All well-pled allegations must be accepted as true. *Id.*

■ Turning to the statutory language, we note that a removal may only be ordered upon a finding of an intentional violation of the Act. Taking the complaint as true, which we must when ruling on a demurrer, *Stone & Edwards*, the only relevant facts averred are that a suppression motion was granted and that an undefined memorandum was not complied with because an agreement to wear the body wire was signed three days late,[5] along with general statements that respondents should have known better because it is believed that they regularly attend seminars of the so called "wiretap school." (Petition, para.43.)

■ Leventry does not tell us, with any precision, what provisions of the Act respondents allegedly violated. We infer, however, from respondents' brief that his asserted violations of the Act were (1) that the respondents used a body wire, which choice did not require prior court approval, *see* Section 5704(2)(ii) of the Act,[6] 18 Pa. C.S. § 5704(2)(ii), and (2) that the recordings were of conversations he conducted from his home. Because Leventry admits that in this case a body wire *was* used and, hence, by statute, no prior court approval was needed, *see* Section 5704(2)(ii) of the Act, we conclude that there is no violation of the Act pled. Regarding his other contention, while Leventry avers in this case that he was at home when the statements were intercepted, he never alleges that **the informer was in his home with him,** a necessary allegation to overcome the statutory exception in Section 5704(2)(iv) of the

---

5. Assuming this were true, we fail to see how it would prejudice Petitioner.

6. This provision states:

   § **5704. Exceptions to prohibition of interception and disclosure of communications**

   It shall not be unlawful and no prior court approval shall be required under this chapter for:

   . . . .

   (2) Any investigative or law enforcement officer or any person acting at the direction or request of an investigative or law enforcement officer to intercept a wire, electronic or oral communication involving suspected criminal activities, including, but not limited to, the crimes enumerated in section 5708 (relating to order authorizing interception of wire, electronic or oral communications), where:

   . . . .

   (ii) one of the parties to the communication has given prior consent to such interception. However, no interception under this paragraph shall be made unless the Attorney General or a deputy attorney general designated in writing by the Attorney General, or the district attorney, or an assistant district attorney designated in writing by the district attorney, of the county wherein the interception is to be made, has reviewed the facts and is satisfied that the consent is voluntary and has given prior approval for the interception; however such interception shall be subject to the recording and record keeping requirements of section 5714(a) (relating to recording of intercepted communications) and that the Attorney General, deputy attorney general, district attorney or assistant district attorney authorizing the interception shall be the custodian of recorded evidence obtained therefrom. . .

Act, 18 Pa.C.S. § 5704(2)(iv).[7] In fact, Leventry appears to admit that he telephoned the informant and the suppression order is of the "intercepted telephone calls." Thus, on the face of the petition, Leventry has not pled any violation of the Act, let alone any intentional one.

Turning to Leventry's other allegation, which does not appear to have its roots in any specific statutory provision in the Act, obtaining the informant's signature three days late on a document pertaining to the wearing of a body wire does not indicate that respondents intended to violate the Act. To the contrary, it shows only that the officers overlooked the need for a signature and then attempted to correct the oversight. We, thus, conclude that no facts indicating an intent to violate the Act have been pled and, consequently, a cause of action for removal of the two officers has not been established.

Accordingly, based on the foregoing discussion, we will sustain the preliminary objection pertaining to scandalous and impertinent matter in part and deny it in part and sustain the demurrer.

7. Section 5704 reads in pertinent part:
§ 5704. **Exceptions to prohibition of interception and disclosure of communications**
It shall not be unlawful and no prior court approval shall be required under this chapter for:
....
(2) Any investigative or law enforcement officer or any person acting at the direction or request of an investigative or law enforcement officer to intercept a wire, electronic or oral communication involving suspected criminal activities, including, but not limited to, the crimes enumerated in section 5708 (relating to order authorizing interception of wire, electronic or oral communications), where:
....
(iv) the requirements of this subparagraph are met. If an oral interception otherwise

*ORDER*

NOW, April 18, 2002, the preliminary objection pertaining to scandalous and impertinent matter is sustained as to paragraphs 23–42 and 44–55 and denied as to paragraph 43. Further, the demurrer is sustained and the petition is dismissed.

authorized under this paragraph will take place in the home of a nonconsenting party, then, in addition to the requirements of subparagraph (ii), the interception shall not be conducted until an order is first obtained from the president judge, or his designee who shall also be a judge, of a court of common pleas, authorizing such in-home interception, based upon an affidavit by an investigative or law enforcement officer that establishes probable cause for the issuance of such an order. No such order or affidavit shall be required where probable cause and exigent circumstances exist. *For the purposes of this paragraph, an oral interception shall be deemed to take place in the home of a nonconsenting party only if both the consenting and nonconsenting parties are physically present in the home at the time of the interception.* (Emphasis added.)