**PHILADELPHIA PARKING AUTHORITY, Petitioner,**

v.

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted Dec. 9, 1994.

Decided Feb. 1, 1995.

Michael D. Jones, for petitioner.

Randall S. Brandes, Asst. Counsel, and Clifford F. Blaze, Deputy Chief Counsel, for respondent.

Before PELLEGRINI and FRIEDMAN, JJ., and RODGERS, Senior Judge.

FRIEDMAN, Judge.

Philadelphia Parking Authority (Employer) appeals from a decision of the Unemployment Compensation Board of Review (Board) affirming a referee's award of benefits to Francis J. Dillon (Claimant). We affirm.

The Board found the facts as follows. From December 1985 through April 22, 1993, Employer employed Claimant as a construction engineer/accident investigator. Several months prior to Claimant's separation from this employment, Employer informed its employees that it intended to make a serious effort to downsize its operation and would lay off a considerable number of employees. Employer did not apprise its employees of proposed organizational changes; therefore, a particular employee could not reasonably ascertain whether his job would be eliminated. Consequently, the employees were under the impression that they could be laid off at any moment, without prior notice. Moreover, Employer was aware of these fears.

In March of 1993, Employer laid off approximately 115 people. Thereafter, Employer offered an early retirement incentive program to certain employees but failed to identify and inform those individual employees who would be laid off if they failed to accept the plan. However, Employer's former Director of Labor Relations told Claimant that he was on a list of approximately 100 people who could be laid off.[1] Claimant did not have any reasonable assurance that his position would not be eliminated. Furthermore, he feared that if he did not accept the financial incentive, and his position was indeed eliminated, he would lose the financial benefits of having accepted the retirement plan.[2] Thus, although not coerced into taking early retirement, Claimant accepted that incentive offer.

Subsequently, Claimant filed for unemployment compensation benefits, and the Philadelphia Northeast Job Center (Job Center) denied benefits pursuant to Section 402(b) of the Unemployment Compensation Law (Law), Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended,* 43 P.S. § 802(b).[3] Claimant appealed, and fol-

1. In fact, some of the 100 people on that list had been laid off at the time of the initial referee's hearing. (Board's Finding of Fact, No. 11.)

2. The Board notes that certain co-workers of Claimant who failed to accept the early retirement package were laid off shortly after Claimant's departure. (Board's Finding of Fact, No. 16.)

3. Section 402 of the Law, 43 P.S. § 802, provides in relevant part:

> An employe shall be ineligible for compensation for any week—
>
> ....
>
> (b) In which his employment is due to voluntarily leaving work without cause of a necessitous and compelling nature....

lowing a referee's hearing, the referee reversed the Job Center's decision and awarded benefits to Claimant. Employer appealed, and following an initial remand hearing,[4] the Board affirmed the referee's award of benefits.

Employer now asks us to determine whether the Board erred in affirming an award of benefits by concluding that Claimant quit his employment for reasons which were necessitous and compelling.[5]

When a claimant voluntarily terminates employment, that claimant is ineligible for unemployment compensation benefits unless he left his employment for reasons which are necessitous and compelling. Section 402(b) of the Law, 43 P.S. § 802(b). The burden of proving such cause is upon the claimant. *Department of the Navy v. Unemployment Compensation Board of Review,* —— Pa.Commonwealth Ct. ——, 650 A.2d 1138 (1994).

Although the Law does not define the terms "necessitous and compelling," our Supreme Court has described it as follows:

> "[G]ood cause" for voluntarily leaving one's employment (i.e. that cause which is necessitous and compelling) results from circumstances which produce pressure to terminate employment that is both real and substantial, *and* which would compel a reasonable person under the circumstances to act in the same manner.

*Taylor v. Unemployment Compensation Board of Review,* 474 Pa. 351, 358–59, 378 A.2d 829, 832–33 (1977) (emphasis added). The focus of the inquiry is the impact of those circumstances upon the employees, *National Freight, Inc. v. Unemployment Compensation Board of Review,* 34 Pa.Commonwealth Ct. 161, 382 A.2d 1288 (1978), which circumstances must be examined in order to determine whether they rise to the level of "necessitous and compelling." *Anchor Darling Valve Co. v. Unemployment Compensation Board of Review,* 143 Pa.Commonwealth Ct. 171, 598 A.2d 647 (1991).

Relying on *Peoples First Nat'l Bank v. Unemployment Compensation Board of Review,* 159 Pa.Commonwealth Ct. 134, 632 A.2d 1014 (1993), Employer maintains that Claimant's belief here, that his employment would be terminated if he did not accept the voluntary early retirement package, is speculative and, therefore, not cause of a necessitous and compelling nature. We disagree.

In *Peoples First Nat'l Bank,* the employer offered an early retirement package in an effort to reduce overhead costs. During a meeting at which all eligible employees were offered the package, the employer informed the employees that if they did not accept the offer, they may be laid off. Not wanting to be laid off, the claimant accepted the early retirement incentive. Thereafter, the claimant filed for unemployment benefits. At the referee's hearing, when asked if the employer ever told the claimant that he might be laid off if he did not accept the retirement plan, the claimant responded, "They said it was a *possibility, but they didn't think so.*" *Id.* at 140, 632 A.2d at 1018 (emphasis in original). Moreover, the employer never indicated that claimant's job would be eliminated. In fact, the employer offered evidence that continued work was available. Accordingly, we reversed the Board's award of benefits, holding that the claimant's purely speculative belief that a layoff was imminent created a voluntary choice to leave his employment in order to avoid the possibility of being laid off in the future.

4. The purpose of the remand hearing was to allow Claimant to appear with counsel in order to cross-examine Employer's witnesses and present further testimony. (R.R. at 119a.) However, Claimant appeared at the hearing without an attorney. (R.R. at 123a.)

5. Our scope of review in an unemployment compensation appeal is limited to a determination of whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704; *Peoples First Nat'l Bank v. Unemployment Compensation Board of Review,* 159 Pa.Commonwealth Ct. 134, 632 A.2d 1014 (1993). "Whether a voluntary termination was for cause of a necessitous and compelling nature is a legal conclusion always subject to appellate review." *Eby v. Unemployment Compensation Board of Review,* 157 Pa.Commonwealth Ct. 10, 13, 629 A.2d 176, 178 (1993).

However, unlike the case in *Peoples First Nat'l Bank,* Claimant's belief here was more than pure speculation. Rather, based on its fact matrix, this case appears to be analogous to our decision in *Eby v. Unemployment Compensation Board of Review,* 157 Pa.Commonwealth Ct. 10, 629 A.2d 176 (1993). In *Eby,* the employer informed certain employees, including the claimant, that they were in a group that may be laid off. The employer offered those employees a voluntary separation incentive, the purpose of which was to reduce the number of employees through voluntary means thereby minimizing the need for an involuntary reduction of force. Moreover, the employer did not offer any evidence that continuing employment was available *or* that the claimant was told that he would not be terminated if he rejected the early retirement proposal. Under these circumstances, we held that the claimant had a necessitous and compelling reason to accept the incentive package and leave work. Thus, he was entitled to an award of benefits.

As in *Eby,* Employer here did not demonstrate either to Claimant or at the hearing that continuing work would be available to Claimant. *See Department of the Navy; Flannery v. Unemployment Compensation Board of Review,* 125 Pa.Commonwealth Ct. 64, 557 A.2d 52 (1989).[6] Indeed, at the hearing, Employer's own witness and counsel admitted that: (1) it was a natural fear, after 115 people had been laid off, to be afraid of losing one's job; and, (2) Employer expected more lay offs. Employer's counsel stated that, under the circumstances, it would be a natural response to be afraid that your job was next to be eliminated and to accept the retirement package. Employer's witness admitted that Employer knew that those workers who were offered the incentives to retire were afraid their jobs were next to be eliminated, and that there were rumors as to who would be laid off next; however, Employer refused to address those fears.[7] Moreover,

6. In *Department of the Navy,* the employer introduced evidence that continuing work was available; therefore, the claimant's belief that his lay off was imminent was speculative.

In *Flannery,* the employer introduced evidence that continuing work was available. As such, we held that the employee, electing to accept a voluntary retirement package, did not demonstrate a necessitous and compelling cause for terminating employment and that the claimant's speculation of an eventual lay off did not constitute such cause as to render the employee eligible for benefits.

7. The following testimony took place:

R All right. Let me ask you thus. Were there rumors going around that [Sic.]

EW Rumors are always going around in the Parking Authority. No one to my knowledge was told directly that they were going or [sic] be laid off or terminated.

R Did anyone in Authority [sic] at the Parking Authority say, "Call a meeting or issue a definitive memorandum telling everybody, 'Don't believe these rumors. They're not true. Your job is not going to be eliminated or anything like that.' " Did anyone in authority try to placate these rumors that were going around?

EW I don't know.

R You don't know. Did you hear the rumors, yourself?

EW Yes.

R And did anyone bring it to the attention of the people in authority that the employees felt that they were in danger of having their jobs eliminated?

EW I don't know.

EL If I may respond to that. Sure, rumors were going on. A month—the month—a few weeks prior to the early retirement package, part of our reorganization by the Mayor, we laid off 115 people. So people were [sic] already had been laid off and let go. Subsequent to that, an early retirement package was sent out. People got nervous if they didn't take it, their jobs would be eliminated. That's a natural fear.

R Is that—so that's a natural fear.

EL I think that if people first hear that there's a layoff, and then they hear, you know, and now there's an early retirement, maybe that means there's another layoff. Yes, in reorganization which we are still going under, and we're expected to have a lot more layoffs in the next few months.

R All right. Well, being that you think that this was a nature [sic] fear, would you make [sic] think that a person in Mr. Dillon's position acted in a reasonable manner by taking their early retirement incentive?

EL Let me clarify it. A natural fear, as in "Oh, oh. They just laid off 115 people. And oh, oh, now people are reading a memorandum that, you know, you can take an early retirement package."

R I could be next. Right.

EL Right, I could be next.

R So my question.

EL The early retirement option was an option.

R My question to you . . .

EL And that's all it was.

although Employer did not notify its employees who would be at risk of being laid off, a representative of Employer told Claimant that he was on a list of people who could be laid off. In fact, Employer did lay off several people from that list. Furthermore, Claimant testified that he believed he would be terminated if he did not accept the incentive.[8] As such, Claimant had necessary and compelling reason to leave his employment and acted reasonably where Employer created real and substantial pressure on its employees that would compel a reasonable person to act as Claimant did. *See Bliley Electric Co. v. Unemployment Compensation Board of Review,* 158 Pa.Superior Ct. 548, 45 A.2d 898 (1946).

Accordingly, the Board's order is affirmed.

PELLEGRINI, J., concurs in the result only.

*ORDER*

AND NOW, this 1st day of February, 1995, the order of the Unemployment Compensation Board of Review, dated June 16, 1994, at Decision No. B–326350, is hereby AFFIRMED.

R ... under those circumstances ...
EL Um-hum.
R ... what you have characterized as being natural to have some concern about that, would you—do you feel that Mr. Dillon acted in a reasonable manner, being that he had such a natural fear to accept the package rather than risk getting terminated?
EL Yeah, I can see that being a natural response, however, it was an option. If he voluntarily chose that option, sure, he can chose that option.

(R.R. at 58a–59a.)

8. Claimant testified as follows:

R Okay. Well, if they were going to lay you off anyway, why give you a financial incentive to retire early?
C I don't ...
R You have no knowledge of that?
C The word was around everybody over 55 is going to get laid off.
R Okay. Now, how are things done at the Parking Authority. [Sic.] Is that how policy decisions are passed around by word of mouth?
C I would say yeah.

....

R And whatever you saw on the bulletin board, did it specifically state that your job would be eliminated?
C No.
R Okay. So, but you felt it would be eliminated.
C Yes.
R If you did not feel that your job would have been eliminated, would you have accepted the early retirement?
C No.

....

R Okay. Let me make sure I clarify this for the record. My impression of what you said so far, is that you would not have taken the early retirement unless you felt that your job was going to be eliminated. Is that correct?
C That's correct. That's it in a nutshell.

(R.R. at 39a–41a.)