IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Kimberly A. Walker,                        :
                                           : No. 1766 C.D. 2015
                        Petitioner         : Submitted: February 12, 2016
                                           :
            v.                             :
                                           :
Unemployment Compensation                  :
Board of Review,                           :
                                           :
                        Respondent         :


BEFORE:   HONORABLE ROBERT SIMPSON, Judge
          HONORABLE MICHAEL H. WOJCIK, Judge
          HONORABLE DAN PELLEGRINI, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                            FILED:  May 12, 2016


            Kimberly A. Walker (Claimant) petitions *pro se* for review of the
August 13, 2015 order of the Unemployment Compensation Board of Review
(Board), which affirmed a referee's determination and held that Claimant was
ineligible for benefits under Section 402(b) of the Unemployment Compensation
Law (Law).[1]  We affirm.

            Claimant was employed as a full-time paint manager by Somerset
Auto Parts, Inc. (Employer) from July 6, 2009 until March 12, 2015, at a final rate

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended,* 43 P.S. §802(b).  Section 402(b) provides that an employee shall be ineligible for compensation for any week in which her unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature.

of $13.75 per hour, when she voluntarily quit her employment. The local service center found that Claimant did not show a necessitous and compelling reason for leaving her job and denied benefits under Section 402(b). Claimant appealed.

A referee held a hearing on June 3, 2015, where both parties appeared with counsel. Claimant testified that, on February 3, 2015, she was extremely busy when she noticed Employer's delivery coordinator (Coworker) texting on her cell phone, trying to take a nap, and generally doing nothing. Claimant stated that she spoke with Coworker about the cell phone use, reminded her of the owner's wishes that employees not use their cell phones while at work, and asked Coworker to follow these wishes when the owner was out of town. Claimant described Coworker's reaction as "a little out of control," which included yelling, swearing, and name calling. Claimant stated that, although they were separated by a counter, she felt threatened that Coworker, while holding a fist in the air, was going to throw a handful of bolts at her. Notes of Testimony (N.T.), June 3, 2015, at 6, 7, 13.

Claimant testified that, with her resignation in hand, she reported this incident to Employer's corporate officer and general manager (General Manager), upon his return from vacation on February 9, 2015. Claimant stated that General Manager would not accept her resignation and that she agreed to stay if he made changes and did something with Coworker. She said that two days later General Manager implemented a cell phone policy banning the use of cell phones in the store. Claimant complained that she heard the repercussions of this new policy from Coworker and another employee. Additionally, Claimant admitted that Coworker apologized to her and that Claimant did not accept the apology because Coworker could not remember what she said or did. *Id*. at 7, 8, 13.

2

Claimant testified that on March 11, 2015, she noticed that a part for one of her orders was sitting on the counter. Claimant stated that, generally, Coworker was supposed to give the part to the driver and the driver was to load it. Claimant informed Coworker that the part for the order was sitting on the counter and that Coworker needed to call the driver back. Claimant testified that Coworker responded by yelling, swearing, and telling her to mind her own business. Claimant said she told Coworker at that point that the two of them needed to go to the office and speak with General Manager, but Coworker refused. *Id*. at 9, 10.

Claimant testified that she went into the office and reported the incident to General Manager. She said that she told him that Coworker was on a rampage again, cussing, swearing, and yelling about a delivery order. Claimant said she informed General Manager that Coworker's behavior was not acceptable in the work place and that Claimant was going home. According to Claimant, General Manager responded that if that is what Claimant needed to do, then she should go. Claimant went home. *Id.* at 10.

Claimant testified that she telephoned General Manager later that day and asked if he planned to do anything with Coworker and General Manager responded that there was nothing he could do and that was the way of the younger generation. Claimant stated that she went to General Manager's office the next day with her uniforms and, again, General Manager reiterated that there was nothing he could do. She testified that she was forced to quit because she felt that she was harassed and threatened. *Id*. at 10.

In rebuttal, General Manager testified that Claimant did not have a supervisory role and was not responsible for any other employee. Furthermore, he

3

stated that Coworker had a supervisory position and that she supervised all part-time delivery people and reported to him. *Id.* at 19.

General Manager testified that he spoke with Claimant, Coworker, and other full-time employees about the February 3, 2015 incident and then sat Coworker down and told her that she could not talk to other employees in that manner. General Manager said he gave Coworker a "final warning" that she would lose her job if it happened again and told her to do her job and leave Claimant alone. General Manager also stated that he implemented a "no cell phone use policy" prohibiting employees from taking personal calls on cell phones in the store. *Id.* at 19, 20, 21, 24.

General Manager recalled that the next incident occurred on March 11, 2015, when Claimant came into his office in an absolute rage and accused Coworker of messing up a delivery order. He stated that after Claimant finished her rant, she said she was leaving, turned, and slammed the door. General Manager testified that he was in the store and did not hear any yelling, nor did anyone else report any vulgar language or yelling. General Manager said he subsequently conducted an investigation and found that Coworker had made a mistake. General Manager stated that Claimant called him later that day and informed him that she was quitting, and the next morning Claimant turned in her keys and uniforms and quit. *Id.* at 22, 23, 24.

Coworker acknowledged that she used vulgar language on February 3, 2015, but she denied shaking any bolts at Claimant. Coworker claimed that Claimant had provoked her all day by making comments about her not doing her job, getting paid to do nothing, and being on her cell phone. Coworker admitted that she "blew up" at Claimant at the end of the day. She also admitted that

General Manager gave her a final warning that if it happened again she would be fired. *Id.* at 28, 31, 32.

Pertaining to the March 11, 2015 incident, Coworker denied using vulgar language. *Id.* at 29. Coworker said that one of the drivers loaded the order without the part and then Claimant came over and made comments to her about not doing her job. Coworker said that she responded to Claimant and told her to "shut up" and mind her own business. Coworker claimed that Claimant at that point came storming back toward her and asked if she wanted to take this conversation to General Manager's office. Coworker said she declined and Claimant went to the office and slammed the door. *Id.* at 32.

The referee affirmed the local service center's determination and found Claimant ineligible for benefits under Section 402(b). Resolving all conflicts in testimony in favor of Employer, the referee determined that Claimant failed to sustain her burden of proving that she had necessitous and compelling reason to quit her employment.

Claimant appealed to the Board, which affirmed the referee's decision. The Board found that Claimant and Coworker had a personality conflict. As to the February 3, 2015 incident, the Board found that Claimant complained to Employer about Coworker's profanity and cell phone use while at work, and Employer addressed both complaints by placing Coworker on a final warning and by establishing a cell phone use policy. As to the March 11, 2015 incident, the Board found that Coworker had made a mistake with a paint order delivery and that Claimant became angry and went to General Manager's office in a rage to complain about Coworker. The Board found that Claimant left General Manager's office when she finished complaining and slammed the door. The Board

5

acknowledged the conflict in testimony regarding the March 11, 2015 incident and resolved the conflict, in its entirety, in favor of Employer's credible testimony. Finally, the Board noted that Claimant failed to demonstrate that Employer would not be responsive to her complaints or that complaining to Employer would be futile, while Employer showed that it was responsive to Claimant's concerns. Accordingly, the Board held that Claimant was ineligible for benefits under Section 402(b).

On appeal,[2] Claimant argues that the Board did not address the following three issues: (1) whether an employee should be allowed to physically threaten another employee in the workplace; (2) whether an employee should be allowed to use vulgarities and inappropriate name calling when directed to another employee in the workplace; and (3) whether an employee should be expected to work in an unsafe environment where she was harassed and threatened. Finally, Claimant complains that she was not permitted to call her witnesses at the hearing.

---

[2] Our scope of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. *Kirkwood v. Unemployment Compensation Board of Review,* 525 A.2d 841, 843-44 (Pa. Cmwlth. 1987). Additionally, the Board is the factfinder in unemployment compensation cases, empowered to determine the credibility of witnesses and resolve conflicts in evidence. *Curran v. Unemployment Compensation Board of Review*, 752 A.2d 938, 940 (Pa. Cmwlth. 2000). The Board's findings are binding and conclusive on appeal if the record, when examined as a whole, contains substantial evidence to support them. *Mathis v. Unemployment Compensation Board of Review*, 64 A.3d 293, 299 (Pa. Cmwlth. 2013). "Substantial evidence is such relevant evidence as a reasonable mind would accept as adequate to support a conclusion." *Guthrie v. Unemployment Compensation Board of Review*, 738 A.2d 518, 521 (Pa. Cmwlth. 1999). We view the record in the light most favorable to the party prevailing before the Board and afford that party the benefit of all reasonable inferences that can be drawn from the evidence to determine if substantial evidence exists. *Big Mountain Imaging v. Unemployment Compensation Board of Review*, 48 A.3d 492, 494-95 (Pa. Cmwlth. 2012).

Preliminarily, we note that under Section 402(b) of the Law, a person is ineligible for unemployment benefits if she voluntarily terminates her employment without cause of a necessitous and compelling nature. The burden of proof rests on the claimant to demonstrate necessitous and compelling cause. *Dopson v. Unemployment Compensation Board of Review*, 983 A.2d 1282, 1284 (Pa. Cmwlth. 2009). Necessitous and compelling cause "results from circumstances which produce pressure to terminate employment that is both real and substantial, and which would compel a reasonable person under the circumstances to act in the same manner." *Philadelphia Parking Authority v. Unemployment Compensation Board of Review,* 654 A.2d 280, 282 (Pa. Cmwlth. 1995) (quoting *Taylor v. Unemployment Compensation Board of Review*, 378 A.2d 829, 832-33 (Pa. 1977)). Whether a person had a necessitous and compelling reason to voluntarily quit employment is a question of law subject to this Court's review. *Middletown Township v. Unemployment Compensation Board of Review,* 40 A.3d 217, 227 (Pa. Cmwlth. 2012).

After careful review of the record, we conclude that the Board's findings are supported by substantial evidence. These findings, in turn, support the Board's conclusion that Claimant did not demonstrate necessitous and compelling cause for quitting her job. Specifically, the Board determined that Claimant and Coworker had a personality conflict, and it is well-settled that absent an intolerable work atmosphere, personality conflicts do not amount to a necessitous and compelling reason for leaving one's employment. *Ann Kearney Astolfi DMD P.C. v. Unemployment Compensation Board of Review,* 995 A.2d 1286, 1290 (Pa. Cmwlth. 2010); *Lynn v. Unemployment Compensation Board of Review,* 427 A.2d 736, 737 (Pa. Cmwlth. 1981).

7

On appeal, Claimant argues that she established good cause to quit her employment because she was exposed to unsafe working conditions when Coworker used vulgarities, called her names, and physically threatened her. However, Claimant's testimony in this regard was not accepted by the Board. Essentially, then, Claimant is asking this Court to review the evidence and credit her testimony over that offered by Employer. As we previously observed, questions of credibility and evidentiary weight are within the sole discretion of the Board and are not subject to reevaluation on judicial review. *Bell v. Unemployment Compensation Board of Review*, 921 A.2d 23, 26 n.4 (Pa. Cmwlth. 2007). Accordingly, Claimant cannot rely on her preferred version of the facts to meet her burden of proof.

Claimant's remaining argument is that the referee erred in denying her request to call two additional witnesses at the hearing. Unfortunately, this issue was raised for the first time in Claimant's reconsideration request, after the Board had issued its decision.[3] The failure to preserve an issue before the Board results in waiver of the issue. *Merida v. Unemployment Compensation Board of Review*, 543 A.2d 593, 596 (Pa. Cmwlth. 1998), *appeal dismissed*, 570 A.2d 1320 (Pa. 1990). Additionally, "issues raised for the first time in a reconsideration request, after the agency has issued its adjudication, cannot be regarded as raising the issues while the matter was before the agency." *Bedford Downs Management Corporation v.*

---

[3] Represented by counsel at the hearing, Claimant called herself and Coworker as witnesses in her case-in-chief, and attempted to call two terminated employees who left Employer prior to 2015. The referee found that the additional witnesses could not offer relevant testimony because they lacked personal knowledge of the incidents occurring on February 3, 2015, and March 11, 2015.

*State Harness Racing Commission*, 926 A.2d 908, 924 (Pa. 2007). Thus, this issue is waived on appeal.[4]

Accordingly, we affirm the Board's order.

MICHAEL H. WOJCIK, Judge

---

[4] Even if this issue was not waived, our disposition would be the same. It is well settled that "when an employee is terminated or quits, 'the factual matrix at the time of separation governs' as to whether a claimant is entitled to benefits, and the relevant inquiry in determining the cause of a claimant's unemployment is confined to the surrounding circumstances existing at the time of the claimant's departure." *Hussey Copper Ltd. v. Unemployment Compensation Board of Review*, 718 A.2d 894, 899 (Pa. Cmwlth. 1998) (citing *Warner Co. v. Unemployment Compensation Board of Review*, 153 A.2d 906, 909 (Pa. 1959)). Because Claimant's witnesses lacked first-hand knowledge of the events that occurred in 2015, the referee did not err in excluding their testimony.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Kimberly A. Walker,        :
       : No. 1766 C.D. 2015
           Petitioner     :
       :
           v.        :
       :
Unemployment Compensation    :
Board of Review,        :
       :
           Respondent    :

## O R D E R

AND NOW, this 12th day of May, 2016, the order of the Unemployment Compensation Board of Review, dated August 13, 2015, is affirmed.

_____
MICHAEL H. WOJCIK, Judge