IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Christopher J. Powers,                    :
                                          :
                          Petitioner      :
                                          :
          v.                              : No. 773 C.D. 2019
                                          : Argued:  June 12, 2020
Unemployment Compensation                 :
Board of Review,                          :
                                          :
                          Respondent      :


BEFORE:   HONORABLE MICHAEL H. WOJCIK, Judge
          HONORABLE ELLEN CEISLER, Judge
          HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                                    FILED:  July 10, 2020


          Christopher J. Powers (Claimant) petitions for review of the April

23, 2019 order of the Unemployment Compensation Board of Review (Board).

The Board held that Claimant is ineligible for benefits under Section 402(b) of the

Unemployment Compensation Law (Law)[1] because he voluntarily left his

employment with Construction Services International (Employer) without

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §802(b).  Section 402(b) of the Law provides that an employee shall be ineligible for compensation for any week in which his unemployment "is due to voluntarily leaving work without cause of a necessitous and compelling nature."  Whether a claimant had necessitous and compelling cause to voluntarily leave his employment is a question of law subject to this Court's review. *Pennsylvania Gaming Control Board v. Unemployment Compensation Board of Review*, 47 A.3d 1262, 1265 (Pa. Cmwlth. 2012).

necessitous and compelling cause. Claimant raises three issues on appeal:[2] (1) whether substantial evidence supports the Board's finding that Claimant voluntarily left his employment; (2) whether Claimant demonstrated necessitous and compelling cause to leave his employment; and (3) whether Claimant's report to his union representative, who promptly contacted Employer, was adequate notice to Employer for purposes of Section 402(b).

Facts and Procedural History

Claimant is a member of the Laborers' International Union of North America, Local 57 (Union). Claimant began working for Employer in June 2017; his last day of work was Friday, August 10, 2018. The local service center determined that Claimant was ineligible for benefits because he did not take all reasonable and necessary steps to preserve his employment prior to leaving. Claimant appealed, and a referee held a hearing on January 14, 2019. Claimant was represented by counsel, and Employer was represented by its president, Herb Scheuren (Scheuren).

Claimant testified that he was the only member of his Union working at the job site. He noted that Union representatives were not allowed at the site, which was a construction project for the Defense Logistics Agency, an agency of the U.S. Department of Defense. Claimant's duties involved using a laser device to check ground elevation and advising the excavator operator where the stone or subgrade was located.

Claimant stated that on the date in question, he noticed a high spot and asked Richard Snyder (Snyder), the excavator operator, to crop it. Snyder called

[2] The Board is not participating. Employer intervenes. Pa. R.A.P. 1531(a).

him a name and did not grade the area. At the end of the day, Claimant asked Snyder why he would not comply. Claimant said that Snyder "became unhinged" and "threw [a] tirade." Reproduced Record (R.R.) at 71a. According to Claimant, Snyder told him that nobody gave a shit what Claimant had to say. Then Snyder said he wanted to kick Claimant's ass and, "I'll fucking kill you, you know, you don't know how crazy I am." *Id.* Claimant stated Snyder was confrontational and yelling and was within arm's reach as Claimant kept backing up. Claimant testified that he felt threatened and walked away.

Claimant said he went to his truck and just sat there, flustered. While he was there, David Scheuren, the president's brother and Claimant's supervisor (Supervisor), came by, and Claimant walked over to get his paycheck. Claimant said that when he got his check, Supervisor started laughing and mumbled to himself, "Now I know what that is all about." R.R. at 73a. Claimant said he took that to mean that Snyder was still carrying on. Claimant explained that in light of Supervisor's comment and laughter, he did not talk to Supervisor about the incident.

The following Monday, Claimant went to the Union hall before 7:00 a.m. and spoke with his representative, George Hutt. Claimant said he did not go back to the job site because he believed doing so could put him in further jeopardy; instead, he related the details of the incident to Hutt, who assured Claimant that he would take care of the problem. Claimant said he understood that Hutt would speak to Employer and that Claimant would be able to return to the job site and feel safe.

Claimant testified that Hutt later called him and reported that Employer did not want him back and was letting him go due to a lack of work.

3

R.R. at 74a. After speaking to Hutt, Claimant applied for unemployment compensation benefits and indicated he was laid off due to lack of work. Claimant maintained that he did not quit his job. R.R. at 75a.

On cross-examination, Claimant stated he did not remember calling Supervisor to say he was not coming in that day because he "had some stuff to do." R.R. at 81a. However, Claimant said that he likely did that because it was the decent thing to do. Claimant testified that he did not discuss this incident in detail with Employer because (1) he considered Snyder's reaction to be an unusual and bizarre response and did not want to jeopardize the man's employment, and (2) he did not think Employer would be responsive to his concerns. Claimant said that he believed that the Union could resolve the situation, noting that the Union had offered him the work.

Hutt, a Union field representative, testified that he found Claimant waiting at his office shortly before 7:00 a.m. Monday morning. Claimant told Hutt that he had been verbally abused and threatened the previous Friday and did not feel comfortable returning to the job. Hutt testified that he told Claimant he would contact Employer.

Hutt testified that he called Scheuren, informed him that another employee had threatened Claimant, and asked if Scheuren could resolve the situation. Scheuren initially indicated that he was not aware of the problem. Hutt stated that after Scheuren looked into it, he told Hutt that Employer had no work for Claimant. Hutt understood that Claimant was laid off.

Hutt said that Claimant appeared visibly shaken. He added that he had worked with Claimant for a long time and believed him. Hutt stated that Claimant was working with someone who was operating a large piece of

4

equipment, felt threatened, and did the right thing by going to the Union. Hutt further testified that he kept a daily log. He read his notes from August 13, 2018, which were consistent with the details of his testimony, into evidence. R.R. at 89a.

Scheuren testified that Supervisor called him Monday morning to advise that Claimant had not come to work. Scheuren said that when Hutt called him at 7:40 a.m., he related that Claimant had a "verbal spat" with another employee. R.R. at 91a. Scheuren spoke with Snyder the following day. Snyder acknowledged that he had a disagreement with Claimant but told Scheuren he was "over it." R.R. at 94a.

According to Scheuren, Hutt insisted that Claimant be laid off because Claimant no longer wanted to work at the job site. When asked whether Hutt referenced anything more than a "verbal spat," Scheuren responded that he did not want to hear the details from Hutt, he wanted to hear the details from Claimant, who would not call him. R.R. at 93a. Scheuren acknowledged that Hutt said Claimant felt uncomfortable returning to the work site due to the incident. R.R. at 95a. Asked if he understood Hutt to say that assigning Claimant to another job site might resolve the situation, Scheuren replied that Claimant should "grow a pair." *Id.* Scheuren explained that Claimant should have come to him or Supervisor instead of going to his Union to get the matter resolved. Scheuren said that he had no other work for Claimant and told Hutt that if Claimant elected not to return to the work site, Scheuren would assume Claimant quit. R.R. at 96a.

The referee affirmed the job center's determination that Claimant was ineligible for benefits under Section 402(b). The referee found that Claimant's failure to report the incident directly to Employer deprived Employer of notice and an opportunity to respond to the situation. Claimant appealed to the Board, which

5

adopted and incorporated the referee's findings and conclusions, modifying Findings of Fact (F.F.) Nos. 6 and 10, and adding F.F. No. 15.[3]

The Board found:

1. [Claimant] worked full time as a laborer beginning in September 2017 until his last day worked on August 10, 2018, at a final rate of pay of $29.05 per hour.

2. On August 10, 2018, at the end of the day, [Claimant] asked the equipment operator why the operator would not level a portion of the ground which [Claimant] had earlier pointed out needed to be "scraped off."

3. The equipment operator allegedly "went off" on [Claimant], using profanity and threatening language.

4. [Claimant] felt threatened by the behavior.

5. [Claimant] was in his truck, deciding what he wanted to do regarding the incident.

6. The supervisor gave [Claimant] his check.

7. [Claimant] did not inform the supervisor of the situation.

8. On August 13, 2016, [Claimant] went to the Union office and reported the incident to [Hutt, his Union representative).

9. [Hutt] called [Employer].

10. [Hutt] did not inform [Employer] the equipment operator made threatening remarks.

---

[3] In unemployment cases, the Board is the factfinder, empowered to determine the credibility of witnesses and resolve conflicts in evidence. *Curran v. Unemployment Compensation Board of Review*, 752 A.2d 938, 940 (Pa. Cmwlth. 2000).

11. [Employer] was informed [by Hutt] there was a "verbal spat" [between Claimant and the equipment operator].

12. [Claimant] did not inform [Employer] of the incident.

13. [Claimant] voluntarily terminated his employment when he failed to return to the job site.

14. [Claimant] did not inform [Employer] of the incident and behavior of the co-worker.

15. Claimant voluntarily quit his employment through job abandonment connected with issues he was having with another employee.

Board's 4/23/2019 decision, F.F. Nos. 1-15. The Board reasoned:

> [A]n employee who leaves the worksite without informing his employer when he is planning to return may be held to have voluntarily quit. [Claimant] voluntarily quit, not only because he failed to return to work, but because he never contacted [Employer] about the issue and did not inform [Employer] when he was planning to return. Furthermore, [Employer's] witness credibly testified that [Hutt] told him that [Claimant] "no longer wanted to work at that job site . . . ." *The Board resolves all conflict in testimony in favor of [Employer]*.

Board's 4/23/2019 decision at 1 (emphasis added). Claimant now petitions this Court for review.[4]

---

[4] Our scope of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. *Rodriguez v. Unemployment Compensation Board of Review*, 174 A.3d 1158, n.5 (Pa. Cmwlth. 2017). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Guthrie v. Unemployment Compensation Board of Review*, 738 A.2d 518, 521 (Pa. Cmwlth. 1999). We view the record in the light most favorable to the party prevailing before the Board and afford that party the benefit of all reasonable inferences that can be drawn from the record to determine if substantial evidence exists. *Big Mountain Imaging v. Unemployment Compensation Board of Review*, 48 A.3d 492, 494-95 (Pa. Cmwlth. 2012).

<u>Discussion</u>

Under Section 402(b) of the Law, a person is ineligible for unemployment benefits if he voluntarily terminates his employment without cause of a necessitous and compelling nature. A claimant bears the burden to demonstrate necessitous and compelling cause. *Mathis v. Unemployment Compensation Board of Review*, 64 A.3d 293, 299 (Pa. Cmwlth. 2013). We have explained that necessitous and compelling cause "results from circumstances which produce pressure to terminate employment that is both real and substantial, and which would compel a reasonable person under the same circumstances to act in the same manner." *Philadelphia Parking Authority v. Unemployment Compensation Board of Review*, 654 A.2d 280, 282 (Pa. Cmwlth. 1995) (quoting *Taylor v. Unemployment Compensation Board of Review*, 378 A.2d 829, 832-33 (Pa. 1977)). Additionally, a claimant must take all reasonable and necessary steps to maintain his employment, including giving sufficient notice to the employer. *Nolan v. Unemployment Compensation Board of Review*, 797 A.2d 1042, 1046-47 (Pa. Cmwlth. 2002).

Claimant first challenges the Board's finding that he did not inform Employer that he had been threatened, asserting it is contrary to the record. In support of this argument, Claimant relies on his testimony and Hutt's, as well as Scheuren's acknowledgment that he was aware of an incident between Snyder and Claimant.

Claimant also argues that the Board erred in concluding he failed to demonstrate necessitous and compelling cause to leave his employment. Claimant asserts that Snyder's conduct and threatening language, along with Employer's

8

indifference to his safety, demonstrate both necessitous and compelling reason to leave his employment and a need to seek Union representation.

Employer responds that the Board credited Scheuren's testimony, which supports the Board's findings that Claimant did not report to the worksite after Friday, August 10, 2018, and did not inform Employer that he had been threatened or feared for his safety. Further, Employer emphasizes that an employee's burden under Section 402(b) includes notifying the employer of his reason for leaving and taking affirmative steps to maintain the employment relationship. Employer asserts that Claimant's failure to give Employer adequate notice and an opportunity to address the situation renders Claimant ineligible under Section 402(b).

The facts of this case are substantially similar to those in *Unemployment Compensation Board of Review v. Metzger*, 368 A.2d 1384 (Pa. Cmwlth. 1977). The claimant in *Metzger* could not return to work due to illness and asked her sister to contact the employer. The parties disputed whether the sister told the employer of the claimant's illness. The Board credited testimony of the employer's witness and found that the sister did not inform the employer that illness was the reason for the claimant's absence. Consequently, the Board held that the claimant was ineligible for benefits under Section 402(b), and this Court affirmed.

Here, as in *Metzger*, Claimant explained his reason for not reporting to work to a third party, Hutt, but the Board found that Hutt did not adequately communicate the reason for Claimant's absence to Employer. Scheuren's credible testimony supports the Board's finding.

9

Claimant urges this Court to disregard the Board's credibility determinations and reverse the Board's decision based on Claimant's preferred version of the facts. However, as Pennsylvania courts have repeatedly observed, questions of credibility and evidentiary weight are within the sole discretion of the Board and are not subject to reevaluation on judicial review. *See, e.g.*, *Peak v. Unemployment Compensation Board of Review*, 501 A.2d 1383, 1387 (Pa. 1985); *Mathis*, 64 A.3d at 299; *Bell v. Unemployment Compensation Board of Review*, 921 A.2d 23, 26 n.4 (Pa. Cmwlth. 2007).

Finally, we address Claimant's assertion that his report to Hutt, his Union representative, was sufficient to inform Employer of his reasons for not returning to the work site. In support, Claimant notes that the Union is his certified bargaining representative pursuant to the National Labor Relations Act (NLRA), 29 U.S.C. §§151-169. Claimant adds that his right to have a union representative advocate for safety issues is protected by the NLRA and other federal statutes. Claimant cites various decisions holding that refusals to work, refusals to accept job assignments, filings of complaints with safety and health agencies, and complaints to an employer about safety conditions are protected under the NLRA.[5] Claimant also cites *Hyundai America Shipping Agency, Inc.*, 357 N.L.R.B. 860 (2011), wherein the National Labor Relations Board found that work rules requiring employees to raise complaints only to immediate supervisors or human resources interfered with protected rights. Relying on these decisions, Claimant argues that Employer's requirement that Claimant communicate his safety

---

[5] *See, e.g.*, *National Labor Relations Board v. City Disposal Sys., Inc.*, 465 U.S. 822 (1984); *Leslie Metal Arts Co.*, 208 N.L.R.B. 323 (1974), *enforced*, 509 F.2d 811 (6th Cir. 1975).

10

concerns directly to Employer instead of the Union is a direct violation of the representational rights afforded under the NLRA.

Relying on *Monaco v. Commonwealth,* 565 A.2d 127 (Pa. 1989), Employer counters that an employee does not have the right to be absent from work to confer with a union representative. In *Monaco*, our Supreme Court held that employees who left work without permission in order to consult with a union representative had voluntarily quit their employment. *Id.* at 130.

Both parties' arguments miss the mark. Employer did not prohibit Claimant from making reports to the Union or conferring with his Union representative, or otherwise interfere with Claimant's right to representation. Additionally, Claimant is not asserting a right to take off work to consult with a union representative. Simply, Claimant's protected rights to representation are not implicated in this appeal.

In sum, we conclude that the Board's findings are supported by substantial evidence and its decision is in accordance with the Law. Accordingly, we affirm.

_____
MICHAEL H. WOJCIK, Judge

11

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Christopher J. Powers,          :
                                :
                  Petitioner    :
                                :
           v.                   :   No. 773 C.D. 2019
                                :
Unemployment Compensation    :
Board of Review,                :
                                :
                  Respondent   :

## O R D E R

AND NOW, this <u>10</u>th day of <u>July</u>, 2020, the order of the Unemployment Compensation Board of Review, dated April 23, 2019, is AFFIRMED.

_____
MICHAEL H. WOJCIK, Judge