Jessie Sizer, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Submitted on briefs May 9, 1983, to Judges CRAIG, MACPHAIL and BARBIERI, sitting as a panel of three.

*Deborah Harris*, for petitioner.

*Charles Donahue*, Associate Counsel, with him *Richard L. Cole, Jr.*, Chief Counsel, for respondent.

OPINION BY JUDGE CRAIG, June 10, 1983:

Jessie Sizer appeals from an order by the Unemployment Compensation Board of Review which, affirming a referee's decision, (1) denied the claimant benefits under the voluntary quit provision of the Unemployment Compensation Law[1] and (2) assessed a fault overpayment.[2]

Mr. Sizer was a cook at Dave's Eatery from December 18, 1979 to June 26, 1981, earning a final salary of $3.50 per hour. On June 29, he called in sick; his employer, David Stein, informed him that he had been replaced.

Mr. Sizer then applied for unemployment compensation and received $228 in benefits during the month of July. In his Summary of Interview questionnaire,

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §802(b).

[2] 43 P.S. §874(a).

dated July 23, 1981, Mr. Sizer responded to the question, "Why did you leave your job (explain in full)" by stating "Ask for more money." On the basis that he quit his job without notice because of dissatisfaction with his wages, the local unemployment compensation authorities disapproved his benefits and sought recoupment of the $228 already paid.

In his petition from that initial determination, Mr. Sizer provided the following reason for his appeal:

I was lay off. Because I ask for more-money I stayed out on the 28th June—call in sick. And was lay-off.

Unrepresented by counsel at his hearing before the referee, Mr. Sizer testified that he did not call in sick on June 29 because of dissatisfaction with his salary. When asked why he had written "ask for more money" as the reason for allegedly leaving his job, Mr. Sizer responded that he was "laid off" and surmised that he may have been discharged because of his repeated requests for a raise in pay.

Mr. Sizer's employer did not appear at the hearing but sent a letter to the referee which read, in part, as follows:

Monday morning, 29 June, he did not report to work or call. One of my customers then told me that he was told by Mr. Sizer that he had another job at the Jeanes Hospital in Northeast Phila. Then another customer said that Mr. Sizer had told him that he was quitting and wasn't giving me any notice. Therefore the only left [sic] for me to do was replace him.

Mr. Sizer denied the assertions contained in Mr. Stein's letter but acknowledged that he had told patrons of his plans to look for other work.

The referee found that Mr. Sizer quit because of dissatisfaction with his wages. The board affirmed on that basis, noting an inconsistency between Mr.

Sizer's written statements and his testimony but finding his written statements more credible.

In its brief, the board admits that Mr. Stein's letter is hearsay and thus incompetent as evidence to support the referee's finding of fact. *Walker v. Unemployment Compensation Board of Review*, 27 Pa. Commonwealth Ct. 522, 367 A.2d 366 (1976) (hearsay evidence, admitted without objection by the board, will be given its natural probative effect and may support finding if corroborated by any competent evidence in record, but finding of fact by board based solely on hearsay will not stand). The board contends, however, that Mr. Sizer's two written statements corroborate the referee's finding that Mr. Sizer quit because of his wages. *Walker.*

We cannot agree that Mr. Sizer's written statements corroborate the voluntary quit finding.

Mr. Sizer never stated that he quit in any document furnished to the compensation authorities. Moreover, his two written statements, however viewed, constitute no more than attempts to inform the authorities of his belief that Mr. Stein had discharged him for seeking a raise in pay. As evidenced by his testimony and by the documents which he completed, Mr. Sizer does not possess a firm command of English; in particular, his choice of punctuation is arbitrary. His reason for appealing from the initial determination of ineligibility can be read only in either of two ways: (1) that he was discharged because he asked for more money or that (2) because he asked for more money, he called in sick on the 28th of June. At worst, his statement could be read as an admission of an unauthorized absence; yet, the board did not deny Mr. Sizer benefits under the willful misconduct disqualification. Rather, the compensation authorities denied Mr. Sizer benefits under the voluntary quit provisions of the Act and there is no evidence of rec-

ord that Mr. Sizer quit his employment, no matter how his statements are read.

Whether an employee has terminated his employment voluntarily is a question of law to be resolved by looking at the facts of each case. *York Tape and Label Corp. v Unemployment Compensation Board of Review*, 62 Pa. Commonwealth Ct. 163, 169, 435 A.2d 305, 309 (1981). For the board to have found a voluntary termination here, it would have been required to conclude, as a matter of law, that Mr. Sizer's phone call of June 28 was sufficiently definite to constitute a resignation. *Cf. York Tape* at 169, 435 A.2d at 309 (mere statement by employee to employer that she is looking for another job does not constitute voluntary quit). Yet, all parties acknowledge that when Mr. Sizer phoned in sick, his employer informed him that he had been replaced.

Because the record, as a matter of law, does not support a voluntary quit determination, we reverse.

### ORDER

Now, June 10, 1983, the order of the Unemployment Compensation Board of Review, No. B-201212, denying benefits to Jessie Sizer and assessing a fault overpayment of $228, is reversed.

