507 A.2d 1284

Albert T. Mallia, Jr., Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Submitted on briefs September 23, 1985, to Judges MACPHAIL, DOYLE, and BARRY, sitting as a panel of three.

*P. Patrick Morrisey,* for petitioner.

*John W. English, Jr.,* Associate Counsel, with him, *Charles G. Hasson,* Acting Deputy Chief Counsel, for respondent.

OPINION BY JUDGE BARRY, April 17, 1986:

Albert T. Mallia, Jr. (claimant) appeals from an order of the Unemployment Compensation Board of Review (Board) which reversed a decision of the referee awarding him benefits.

The claimant had been employed by Brookdale on the Lake, a resort in the Poconos, as a groundskeeper and maintenance man until his last day of work on June 15, 1983. On that date, the claimant injured his hands in a non-work related accident; as a result, he underwent surgery and was unable to perform his regular duties. While still under his physician's care, the claimant informed his employer that he would return to work as soon as his doctor permitted such return. On or about July 13, 1983, the claimant was told that a Debbie Cordalis from the personnel department wished to see him. According to the claimant's testimony, Ms. Cordalis asked that the claimant provide her with a definite return date. When the claimant told her he was unable to do so, Ms. Cordalis allegedly told the claimant that he would have to be terminated. The claimant was subsequently released by his physician to return to work.

The claimant then filed an application for unemployment benefits which was denied by the Office of Employment Security on the basis that claimant voluntarily terminated his employment. He then appealed and a hearing was held before the referee. The claimant testified as narrated in the prior paragraph. The employer presented the testimony of one Alex Tasselmyer, the maintenance supervisor at Brookdale on the Lake. When asked if he had ever informed the appellant that

he had been fired, Mr. Tasselmyer replied in the negative.

Following the hearing, the referee awarded benefits giving credence to the claimant's testimony that Ms. Cordalis had fired him when he had been unable to give a definite return date. The referee further concluded that the record would not support the legal conclusion that the claimant had engaged in willful misconduct.

The employer then took an appeal to the Board. Without taking additional testimony, the Board found that the claimant had not been fired but had been told to inform the employer when he was able to return to work. Because the claimant had not returned after being released from his physician's care, the Board concluded that the claimant had voluntarily terminated his employment without cause of a necessitous and compelling nature and was, therefore, ineligible for benefits. This appeal followed.

As the Office of Employment Security ruled initially that the claimant had voluntarily quit his job, the claimant had the burden of proving his separation was other than a voluntary quit. *Bowman v. Unemployment Compensation Board of Review*, 49 Pa. Commonwealth Ct. 170, 410 A.2d 422 (1980). Because the claimant, with the burden of proof, did not prevail before the Board, our scope of review is limited to determining whether the factual findings are consistent, whether those factual findings are consistent with the legal conclusions and whether the factual findings can be sustained without a capricious disregard of competent evidence. *Id.* Finally, a determination that one has voluntarily quit his or her job is a question of law dependent on the facts of the case. *Sizer v. Unemployment Compensation Board of Review*, 75 Pa. Commonwealth Ct. 57, 460 A.2d 928 (1983).

The Board's determination that this case involved a voluntary quit is bottomed on factual finding # 5,

which states, "The employer advised the claimant that he was not terminated from his employment that, when his condition had sufficiently improved, the employer would rehire him." (Decision and Order of the Board, 3/28/84). We do not believe this finding can be sustained without capriciously disregarding the testimony of the employer's witness, Mr. Tasselmyer, whose testimony the Board specifically found to be credible. When asked if he had ever told the claimant that he was fired, Mr. Tasselmyer responded:

> No, I didn't tell him that he was fired. I told him that after, you know, I realized that it would take him a little while for his operation to get the rocks out of his hands and whatnot and to come back and *if we had something, that we would hire him back.*

(January 20, 1984 hearing, p. 8) (emphasis added). While Mr. Tasselmyer may well not have told the claimant that he was fired, this testimony cannot support a finding that claimant was advised that he was not terminated. To do the latter, the testimony would have had to have been to the effect that claimant should report to work when he was healed and able to resume his duties. Mr. Tasselmyer, however, only told the claimant that he could resume work when he was healed if an opening existed at that time. The only logical inference that can be drawn from this testimony is that the claimant no longer had a job in his incapacitated state. Under these circumstances, there was no need to explicitly tell the claimant he had been fired.

Since this crucial factual finding must be disregarded, the remainder of the factual findings simply do not support the legal conclusion that the claimant voluntarily quit his employment. The Board specifically found that the claimant was available and able for work. Nothing in the record would support a finding of willful mis-

conduct. Therefore, the order of the Board denying benefits must be reversed.

ORDER

Now, April 17, 1986, the March 28, 1984 order of the Unemployment Compensation Board of Review at No. B-228720 is reversed.