# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Baik and Associates, P.C., | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 2187 C.D. 2015 |
| | : | Submitted: May 13, 2016 |
| Unemployment Compensation | : | |
| Board of Review, | : | |
| Respondent | : | |

BEFORE:   HONORABLE ROBERT SIMPSON, Judge
HONORABLE ANNE E. COVEY, Judge
HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION**
**BY JUDGE SIMPSON**                    **FILED: August 29, 2016**

Baik & Associates, P.C. (Employer), petitions for review from an order of the Unemployment Compensation Board of Review (Board) that granted Matteo Weiner (Claimant) unemployment compensation (UC) benefits, concluding Employer did not prove Claimant committed willful misconduct under Section 402(e) of the UC Law (Law)[1]. Employer contends the Board erred in reaching this determination. Employer also asserts the Board erred in its alternative determination to allow benefits under Section 402(b) of the Law, 43 P.S. §802(b) (relating to voluntary quit). While we agree with some of Employer's arguments, we nevertheless affirm on other grounds.[2]

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, as amended, 43 P.S. §802(e).

[2] We will affirm an order of a lower tribunal even if the reason given is incorrect, where the correct basis for affirmance is apparent on the record. See Phila. Parking Auth. v. Unemployment Comp. Bd. of Review, 1 A.3d 965 (Pa. Cmwlth. 2010).

## I. Background

Claimant worked for Employer as an attorney from May 1, 2012, through May 20, 2015, at a pay rate of $12.00 per hour. Throughout his employment, Claimant primarily reported to Hae Yeon "Helen" Baik (President), president and owner of Employer.

Claimant did not appear for work on May 21, 2015 as a result of a personal obligation. On May 21, 2015, President emailed Claimant advising him not to come into work on May 22 because she needed to procure a business valuation report (Report) for a particular bankruptcy action, and she only wanted Claimant to return to work once she received the Report. Prior to President's May 21 email, however, Claimant worked on various other cases for Employer. Claimant replied to President's email and inquired whether any other work would be made available to him on May 22. President indicated she only wanted Claimant to work on the bankruptcy action at that time, and to do nothing until the Report was received.

President did not receive the Report by May 22. As a result, she emailed Claimant that he should not appear for work the next business day, May 26. President's emails advising Claimant not to report to work continued through Friday, June 12, 2015. On June 12, President anticipated receipt of the Report, and she advised Claimant he should appear for work on Monday, June 15, 2015. Upon receiving President's June 12 email, Claimant informed President that he interpreted the three-week separation from Employer as a constructive termination,

and he attempted to clarify the terms of his future employment. President refused to engage in such discussions with Claimant.

Thereafter, Claimant applied for UC benefits, which a local service denied under Section 402(b) of the Law. Claimant appealed, and a referee's hearing followed.

At the hearing, President testified on behalf of Employer while represented by counsel. Claimant represented himself.

Claimant testified he last worked for Employer on Wednesday, May 20, 2015, and a personal obligation prevented him from working on Thursday, May 21, 2015. Claimant further testified President typically accommodated Claimant when he could not make it into the office. President emailed him on May 21, advising him not to come into work on May 22, because she needed to receive the Report. Claimant attempted to clarify the terms of his employment with President, specifically as to why he could only work on just one bankruptcy case. Referee's Hr'g, Notes of Testimony (N.T.), 8/21/15, at 13. President reiterated that she did not want him coming into work until she received the Report. President's emails advising him not to come into work continued for about three weeks, until June 12, when President emailed him requesting he come to work on June 15. N.T. at 14.

Upon receipt of President's June 12 email, Claimant interpreted the three-week employment separation as a termination, and he would not appear for work on June 15 unless President negotiated different terms of employment. N.T.

3

at 14-15. Claimant also testified that by May 26, President failed to issue his paychecks for the past six to eight weeks of work. N.T. at 24. On cross-examination by Employer's counsel, Claimant admitted that President never stated she terminated Claimant's employment, and that President wanted him to return to work on June 15.

President testified she hired Claimant as a full-time attorney at a rate of $12.00 per hour. Claimant last worked on May 20, 2015. President sent Claimant emails advising him not to report to work from May 22 through June 12. This separation was not considered a vacation for Claimant. N.T. at 20, 21. President could not assign Claimant other work beyond the bankruptcy action because it would not be "beneficial," and she initially anticipated receiving the Report in a few days, not three weeks. N.T. at 21, 22. Employer submitted documentation purporting to show Claimant habitually arrived late for work and spent excessive, unauthorized time on certain cases, but President did not testify in detail regarding this alleged willful misconduct. President testified she wanted Claimant to return to work as a full-time, permanent employee. N.T. at 23.

Ultimately, the referee granted Claimant UC benefits. In so doing, she made the following findings:

> 1. [Claimant] was employed as an [a]ttorney from May 1, 2012 through May 20, 2015; at the time of separation he was working full-time and was earning $12.00 per hour.
>
> 2. Due to family/personal commitments, [Claimant] did not appear for work on Thursday, May 21, 2015.

3. On Thursday, May 21, 2015, [President] advised [Claimant] that he should not appear for work the following day, Friday, May 22, 2015 because 'we have to get the [Report] from the accountant . . . it is useless to go on without the evaluation . . . please take the time off and we will see you on Tuesday [May 26, 2015].'

4. On Thursday, May 21, 2015, [Claimant] responded to [President's] emails by inquiring as to whether there was any work for him to do on Friday, May 22, 2015.

5. [President] replied to [Claimant's] May 21, 2015 inquiry by stating 'I am waiting to get the [Report] . . . once we get it, let's firm up first . . . and [then] go forward with anything else . . . '

6. On Friday, May 22, 2015, [President] advised [Claimant] that he should not appear for work the following business day, Tuesday, May 26, 2015.

7. [Claimant] did not receive [President's] message and appeared for work on Tuesday, May 26, 2015.

8. On May 26, 2015, [President] instructed [Claimant] to go home and informed him that he could resume work when a business valuation report was received by [Employer]. [President] also indicated she would contact [Claimant] to inform him when he could return to work.

9. Subsequently, [President] contacted [Claimant] via email on multiple occasions and advised him not to appear for work on May 27, 28, and 29, 2015 because the [Report] had not yet been received.

10. [President] reiterated the same message to [Claimant] via email and advised him not to appear for work June 1-12, 2015 because the [Report] had not yet been received.

11. On June 12, 2015, [President] contacted Claimant via email and instructed [Claimant] to appear for work on Monday,

5

June 15, 2015 'on or before 9:00 A.M. . . . and [if] you're late submitting the work product, then do not come in the following day. . . .'

12. [Claimant] was absent from work from May 22 – June 15, 2015 because no work was made available to him.

13. When instructed to return to work, [Claimant] endeavored to clarify the terms of his employment but [President] refused to engage in any such discussion.

14. [Claimant] did not initiate the separation from employment and did not voluntarily resign from his position.

15. [Claimant] filed for and received benefits in the aggregate amount of $861 for the claim weeks ending June 20, 2015 through July 4, 2015.

Referee's Dec., 8/26/15, Finding of Fact (F.F.) Nos. 1-15.

Based on her determinations that Employer initiated Claimant's separation from employment and that Claimant did not voluntarily quit, the referee determined Section 402(e) of the Law applied. Applying Section 402(e), the referee concluded:

> Although the record in this matter includes some references to [Claimant's] attendance record and/or failure to appear for work on a timely basis, [Employer] failed to provide sufficient testimony or documentary evidence that would support a finding of willful misconduct by [Claimant]; therefore, benefits cannot be denied under Section 402(e) of the Law.

Referee's Dec. at 3. In her analysis, the referee also noted that, had she decided this case under Section 402(b) of the Law, Claimant would still be entitled to benefits. Id.[3]

On appeal, the Board adopted and incorporated the referee's findings and conclusions and affirmed the grant of benefits. Bd. Op. at 1. Employer now petitions for review to this Court.[4]

## II. Issues

Employer argues it did not terminate Claimant's employment. Rather, he voluntarily quit without good cause, rendering him ineligible for UC benefits under Section 402(b) of the Law. Employer further maintains Claimant is only entitled to benefits for the separation period of May 20, 2015, through June 12, 2015. Alternatively, Employer argues the record contains substantial evidence to show Claimant committed willful misconduct by habitually arriving late to work and by disregarding President's instructions to limit the time he spent on certain cases.

---

[3] The service center's decision denying benefits also included a determination that Claimant had a fault overpayment for the claim weeks ending June 20, 2014 through July 4, 2015. The referee determined there was no fault overpayment because Claimant was, in fact, eligible for UC benefits. Because no party raises an issue regarding the overpayment, we do not address it.

[4] Our review is limited to determining whether necessary findings of fact were supported by substantial evidence, whether errors of law were committed, or whether constitutional rights were violated. Oliver v. Unemployment Comp. Bd. of Review, 5 A.3d 432 (Pa Cmwlth. 2010) (en banc).

### III. Discussion

The Board is the ultimate fact-finder in UC cases and is empowered to resolve conflicts in the evidence and determine the credibility of witnesses. Lee v. Unemployment Comp. Bd. of Review, 33 A.3d 717 (Pa. Cmwlth. 2011). The Board's findings are conclusive on appeal if the record contains substantial evidence to support those findings. Id. This Court views the record in the light most favorable to the party that prevailed before the Board, and we give that party the benefit of all reasonable inferences that can be drawn from the evidence. Sanders v. Unemployment Comp. Bd. of Review, 739 A.2d 616 (Pa. Cmwlth. 1999).

### A. Nature of Separation

Employer first argues Claimant voluntarily quit his employment, and its actions cannot amount to a discharge under Section 402(e) of the Law. Employer contends it was error for the referee and the Board to determine it terminated Claimant's employment in light of President's unrefuted testimony that she never told Claimant he was "fired" or "terminated," and because President intended for Claimant to return to work. N.T. at 19, 22.

Whether an employee's action amounts to a voluntary termination is a question of law to be determined by examining the Board's findings. Fishel v. Unemployment Comp. Bd. of Review, 674 A.2d 770 (Pa. Cmwlth. 1996); Pa. Liquor Control Bd. v. Unemployment Comp. Bd. of Review, 648 A.2d 124 (Pa. Cmwlth. 1994). If an employee, without action by the employer, quits employment, his action amounts to a voluntary termination. Fishel; Sweigart v. Unemployment Comp. Bd. of Review, 408 A.2d 561 (Pa. Cmwlth. 1979). A

8

claimant who resigns to avoid the mere possibility of a discharge will be found to have voluntarily terminated his employment. Fishel.

The claimant has the burden to prove his separation was the result of a termination from employment. Key v. Unemployment Comp. Bd. of Review, 687 A.2d 409 (Pa. Cmwlth. 1996). For a claimant to prove a termination, he must show the employer's actions or words were sufficient to evince the immediacy and finality of a firing. Monaco v. Unemployment Comp. Bd. of Review, 565 A.2d 127 (Pa. 1989); DeMelfi v. Unemployment Comp. Bd. of Review, 442 A.2d 1249 (Pa. Cmwlth. 1982); Chinn v. Unemployment Comp. Bd. of Review, 426 A.2d 1250 (Pa. Cmwlth. 1981). Examples include an employer telling a claimant, "pick up your pay," "turn in your key," or "pull your time card." Rizzitano v. Unemployment Comp. Bd. of Review, 377 A.2d 1060, 1061 (Pa. Cmwlth. 1977). This Court utilizes a totality of the circumstances test to determine the claimant's intent. Monaco.

Here, the Board's supported findings compel a determination that Claimant voluntary quit his employment rather than a determination that Employer terminated Claimant's employment. More particularly, the record does not evince any communication from President to Claimant reflecting the requisite *immediacy and finality of a firing*. Monaco; DeMelfi; Chinn. Not surprisingly, the Board's adopted findings do not contain such communications. To the contrary, the Board's adopted findings reveal President made repeated attempts to communicate to Claimant that the employment relationship was ongoing. F.F. Nos. 3, 8, 11. In many of the emails, President wrote, "[a]s soon as I get [the Report], I will let you

9

know immediately." C.R., Item No. 2. President wanted Claimant to return to work upon her receipt of the Report. F.F. No. 11; N.T. at 21-23. No fair interpretation of President's communications suggests President intended to terminate Claimant's employment. Thus, we conclude Claimant voluntarily terminated his employment by way of his June 15th email when he "consider[ed] [him]self to have been terminated …." C.R., Item No. 2, 13; see Fishel.[5]

Because Claimant's separation from Employer was not the result of a termination of employment by Employer, we analyze this case under Section 402(b) of the Law.

## B. Voluntary Quit

Under Section 402(b) of the Law, a claimant shall be ineligible for benefits when he voluntarily terminates his employment without necessitous and compelling cause. 43 P.S. §802(b). A finding that a claimant voluntarily terminated his employment is not an absolute bar to UC benefits, so long as he is able to prove a necessitous and compelling cause existed that warranted the

---

[5] In its brief, the Board relies on Davila v. Unemployment Compensation Board of Review, 926 A.2d 1287 (Pa. Cmwlth. 2007) and Mallia v. Unemployment Compensation Board of Review, 507 A.2d 1284 (Pa. Cmwlth. 1986), and argues that because Employer initiated the separation, Claimant could only logically infer he was terminated. The Board's reliance on these cases is misplaced. Davila involved a denial of UC benefits where a claimant voluntarily participated in an employee retirement program, which necessitated her eventual employment separation and employer provided evidence of the availability of continuing work had claimant chosen not to retire. Further, the claimant in Mallia ceased work as a groundskeeper based on a physical injury, and his employer told him he would be *rehired* if his physical condition improved. Mallia, 507 A.2d at 1286. Therefore, the Mallia claimant's only logically inference was that he no longer had a job while he was injured. Id. Davila and Mallia are inapposite here. To that end, in the instant case, President's emails show the continuation of an employment relationship with Claimant, so Claimant could not logically infer he was terminated.

termination. Monaco; Brunswick Hotel & Conference Center, LLC v. Unemployment Comp. Bd. of Review, 906 A.2d 657 (Pa. Cmwlth. 2006). This burden rests with the claimant. Id.

In order to satisfy this burden, a claimant must show: (1) circumstances existed that produced real and substantial pressure to terminate employment; (2) such circumstances would compel a reasonable person to act in the same manner; (3) the claimant acted with ordinary common sense; and, (4) the claimant made a reasonable effort to preserve his employment. Brunswick Hotel; Fitzgerald v. Unemployment Comp. Bd. of Review, 714 A.2d 1126 (Pa. Cmwlth. 1998). Whether an employee had necessitous and compelling cause is a question of law, which is fully reviewable by this Court. Brunswick Hotel.

"It is well-settled that an employer's imposition of a substantial unilateral change in the terms of employment constitutes a necessitous and compelling cause for an employee to terminate his employment." Brunswick Hotel, 906 A.2d at 660; A-Positive Elec. v. Unemployment Comp. Bd. of Review, 654 A.2d 299 (Pa. Cmwlth. 1995). Examples include an employer substantially reducing a claimant's pay, Ship Inn Inc. v. Unemployment Comp. Bd. of Review, 412 A.2d 913 (Pa. Cmwlth. 1980), hours, Earnest v. Unemployment Comp. Bd. of Review, 30 A.3d 1249 (Pa. Cmwlth. 2011), failing to timely remit paychecks, A-Positive Elec., or failing to provide work to a claimant, Phila. Parking Auth. v. Unemployment Comp. Bd. of Review, 654 A.2d 280 (Pa. Cmwlth. 1995).

As to Section 402(b), the referee here stated (with emphasis added):

11

The Referee wishes to note that had the Referee decided this case under Section 402(b) of the Law, [Claimant] would have been found eligible for benefits based on his unrefuted testimony that he declined to appear for work after a three week gap because it represented a unilateral change in the terms and conditions of his position as a full-time employee i.e., hours of work.

[Claimant] also provided unrefuted testimony that he had not been paid by [Employer] for work performed by him. Again, this too is recognized by the [c]ourts as a necessitous and compelling cause for leaving employment.

Referee's Dec. at 3. The Board adopted this reasoning along with the rest of the referee's decision.

Upon review, the record supports the unemployment compensation authorities' alternative determination that Claimant had necessitous and compelling cause to voluntarily terminate his employment. As a full-time employee paid hourly, N.T. at 8, Employer's imposition of a sudden three-week separation constituted a substantial reduction in hours and presumably, pay. Earnest; Ship Inn. Claimant's relegation to just one bankruptcy case, and the corresponding lack of work, also constitutes necessitous and compelling cause to terminate employment. Phila. Parking Auth. (claimant awarded UC benefits when he chose to voluntarily terminate his employment and employer did not prove continuing work was available).

Additionally, Claimant presented unrefuted testimony that Employer did not pay him for six to eight weeks. N.T. at 24; Referee's Dec. at 3. Employer's failure to remit timely paychecks also constitutes necessitous and compelling cause for Claimant to quit. A-Positive Elec. Lastly, amidst the three-

12

week separation, Claimant's attempts at renegotiating his terms and conditions of employment with President show he made a reasonable effort to preserve the employment relationship. See F.F. No. 13; N.T. at 13, 15, 18; Brunswick Hotel; Fitzgerald. Thus, we agree with the Board's adopted alternative analysis that Claimant is eligible for UC benefits under Section 402(b) of the Law because he had the requisite necessitous and compelling cause to terminate his employment.

Based on the foregoing, we affirm on other grounds.

_____
ROBERT SIMPSON, Judge

13

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

Baik and Associates, P.C.,                 :
                            Petitioner     :
                                           :
            v.                             :     No. 2187 C.D. 2015
                                           :
Unemployment Compensation                  :
Board of Review,                           :
                            Respondent     :

# **O R D E R**

**AND NOW**, this 29th day of August, 2016, the order of the Unemployment Compensation Board of Review is **AFFIRMED** on other grounds.

_____
ROBERT SIMPSON, Judge